# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JUNE TERM, 1875.

LIBERTY BILLINGS, APPELLANT, VS. GUSTAVE STARK, RE-
SPONDENT.

.1. A certificate of the Clerk of the United States Direct Tax Commissioners is not evidence of a sale by them for taxes.

2. By the act of Congress of June 7, 1862, for the collection of direct taxes in insurrectionary districts, " the title of, in, and to each and every piece or parcel of land upon which said tax has not been paid * * shall thereupon become forfeited to the United States, and, upon the sale hereinafter provided for, shall vest in the United States, or in the purchasers at such sale, in fee simple, free and discharged from all prior liens, incumbrances, right, title, and claim whatsoever." Under this provision, where the plaintiff shows title under a certificate of sale by the tax commissioners, the evidence of the defendant's good title anterior to the tax assessment and sale, or of a title by deed from the former owner, is not a defence.

3. Either party is entitled to the benefit of any evidence introduced upon the trial by the other party.

4. The neglect or refusal of one of three forming a board of United States Tax Commissioners to act, or his dissent from the proceedings of the majority, will not invalidate the act of the majority; and a tax sale certificate signed by two of the commissioners is "*prima facie* evidence of the regularity and validity of the sale and of the title of the purchaser;" and this having been held by the Supreme Court of the United States, construing an act of Congress, is conclusive upon the State courts.

5. There is no power vested by law in the officers of the Treasury Department to set aside a sale, or vacate a title acquired by a purchaser at a sale, for direct taxes; and the assent of the purchaser to the setting aside of the sale, after he had conveyed the premises to a third person, cannot affect the rights of such third person, unless he also assented.

20

6. A deed in the possession of the grantee is presumed to have been duly delivered at the time it bears date.

7. The court charged the jury that, if they find, from the evidence, that the plaintiff (the grantee of a purchaser at a tax sale) did not put his deed on record until after the purchase by the defendant from one who owned the property before the tax sale, and that the defendant had no notice of the plaintiff's title, and who purchased for a valuable consideration, the plaintiff's title would not prevail. *Held*, that this instruction was erroneous. The act in regard to recording conveyances in this regard relates to conveyances by the same grantor or his grantees, and was designed to protect subsequent purchasers and creditors, and has no reference to a title acquired from other sources.

Appeal from judgment of Circuit Court for Nassau county.

The appellant sued the respondent in ejectment to recover a lot of land in Fernandina.

The defendant answered, denying the allegations in the complaint, and, for a further defence, alleged that he had had the peaceable possession of the premises, under title adverse to the plaintiff, for seven years preceding the commencement of this suit.

Upon trial, plaintiff proved that the defendant was in possession of the premises at the time of the commencement of suit; produced a deed of bargain, sale, and quit claim, executed by C. L. Robinson, conveying the lot to plaintiff, dated 20th July, 1863, duly sealed and witnessed, and proved for record 28th May, 1872, and recorded October 25, 1873.

Plaintiff also offered in evidence a certificate of the Clerk of the Board of United States Direct Tax Commissioners for Florida, dated July 20, 1863, stating that the lot in question had been sold to C. L. Robinson, for taxes, by the United States Tax Commissioners for direct taxes, in June, 1863. Defendant objected to the reading of this certificate in evidence. The record shows that the court refused to receive it as evidence. The plaintiff excepted to the ruling.

The plaintiff having rested, the defendant offered in evi-

dence certain conveyances of the lot in question, viz.: A deed of trust from the Florida Railroad Company to Soulter & McRae; a power of attorney from Soulter & McRae to George W. Call, authorizing him to sell and convey the land; a deed by G. W. Call, attorney, dated in 1860, to F. A. and J. J. Acosta; and a deed, by the latter, to Mary B. Stark, wife of defendant, dated January 17, 1867, all duly recorded—which were objected to by the plaintiff and admitted by the court, to which plaintiff excepted. Defendant then proved possession, by his grantors and himself and wife, from 1856 to the present time.

The defendant then further offered in evidence a certified transcript, from the Treasury Department of the United States, of proceedings of the Board of United States Tax Commissioners for Florida, in relation to the sale of the lot, and other papers, viz.: 1. A copy of the certificate of sale by the United States Tax Commissioners (signed by two of the commissioners, Sammis and Reed), for direct taxes, dated 22d June, 1863, stating that the lot had been sold by them to C. L. Robinson; 2. A paper, dated September 3, 1863, purporting to be an opinion of the Commissioner of Internal Revenue, that the sale by Sammis and Reed, without the concurrence of the other commissioner, was void, and that the property ought to be re-advertised for sale; 3. A new notice of sale, signed by Stickney and Alsop, two of the then commissioners, for a sale to be made in November, 1864; 4. A certificate of sale of the lot, for direct taxes, December 28, 1864, to Leah Mooney, signed by three commissioners; 5. A certificate that T. N. Acosta had redeemed the lot from sale, April 10, 1865, signed by three commissioners, Stickney, Smith and Alsop; and, 6. John H. Mooney's receipt for the redemption money.

A further transcript from the Treasury Department was offered to show that Stickney, of the tax commissioners, was not in Florida, and had not concurred in making the appraisement and sale of lots in 1863, and that he dissented.

from and disapproved of the acts of Sammis and Reed, and to show that the tax certificate under which plaintiff claims had been surrendered by Robinson and cancelled, and the purchase money returned to him after the decision of the commissioner at Washington that the sale was void.

The plaintiff was called as a witness for the defendant, and testified that he came to Florida in the spring of 1863, where he met Stickney and Robinson, who both urged him to purchase at the sale to come off in June; that he received the deed from Robinson, who sent it to him at Beaufort; accepted the deed; got back from Robinson about $190 of money left in his hands, but had not recovered any part of the consideration paid him for the lots described in the deed.

C. L. Robinson testified, in behalf of defendant, that his impression was that he gave plaintiff a quit-claim deed. Plaintiff was at Fernandina before the sale took place in June. Stickney, one of the commissioners, was a 'business partner of witness. Witness afterwards learned that the government had repudiated the sale, and he surrendered the certificate to the commissioners in the fall or winter, and took back the purchase money. At the second sale he bought again, but not for Billings. Billings had left money with him to buy lots in Fernandina. After the sale witness informed Billings that he had purchased extensively, and if he wanted any lots, to. come and select them. Billings wrote him to make the selection himself, and send him a deed. Made a quit-claim deed for several lots, including the lot in question, and left it in his store with a partner; did not send it to Billings.

Under the charge of the court, the jury retired and returned a verdict for defendant.

*Billings* for Appellant.

*Friend &.Hammond* for Respondent.

RANDALL, C. J., delivered the opinion of the court.

Had the defendant rested upon the plaintiff's showing, the verdict could not have been disturbed. The certificate of the *Clerk* of the Board of Tax Commissioners is not made evidence of the sale of lands for taxes. The act of Congress makes the certificate of the commissioners evidence of the sale. When the defendant introduced a certified copy of the tax certificate, of the date of June, 1863, he had supplied the necessary link in the plaintiff's testimony by which his case was *prima facie* made out. The defendant's counsel insists that the plaintiff is not entitled to the benefit of the certificate of sale, introduced by the defendant in connection with other papers, but the rule is otherwise. If the whole record contain evidence sufficient to make the plaintiff's case, he is entitled to it, though introduced by the defendant, even as the defendant is entitled to use any evidence produced by the plaintiff. The case stands upon the whole evidence before the court.

The certificate of the tax sale to Robinson, signed by the direct tax commissioners, and the deed from Robinson to Billings, made a case upon which the plaintiff was entitled to recover, unless this title was overthrown by the evidence on the part of the defendant.

The defendant, in order to defeat the plaintiff's right of recovery, introduced his evidence of title from the Florida Railroad Company, in 1856, down to the deed of the Acostas, in 1867, to the wife of the defendant.

It was objected to the deed executed by George W. Call, as attorney of Soulter and McRae, trustees, that the deed was of no effect because the trustees had no authority to act by attorney, there being no express powers to appoint an attorney-in-fact in the deed of trust; and this is a prominent point made in the assignment of errors. In view of the whole sale, however, we will not dissect the deed of trust at this time to ascertain the scope of the authority of the trustees, for it makes no difference in the result. The

defendant is in possession, and the plaintiff's right depends upon the tax sale, while the defendant's rights, as against the plaintiff, do not depend upon the validity of his former title.

And so the evidence of title offered on the part of the defendant was superfluous and irrelevant to his defence.

The fourth section of the act of Congress of June 7, 1862, "for the collection of direct taxes in insurrectionary districts within the United States, and for other purposes," reads as follows: "That the title of, in, and to each and every piece or parcel of land upon which said tax has not been paid, as above provided, shall thereupon become forfeited to the United States, and, upon the sale hereinafter provided, shall vest in the United States, or in the purchasers at such sale, in fee simple, free and discharged from all prior liens, incumbrances, right, title, and claim whatsoever."

The sale of the property in controversy was made by the tax commissioners because of the non-payment of a tax levied in pursuance of this law. The validity of the act of Congress is not called in question upon the argument as to the whole or any part of its provisions. The sale having been made, and the certificate given as required by law, the purchaser was invested with the title, "free and discharged from all prior liens, incumbrances, right, title, and claim whatsoever;" and, by the seventh section, "the certificate shall be received in all courts and places as *prima facie* evidence of the regularity and validity of the sale, and of the title of the said purchaser," subject to the right to redeem by the former owner, or others having an interest, within the time prescribed by law.

And we repeat that the plaintiff's case, resting upon the tax sale and the deed from the purchaser, is not met by the evidence of a former title. The defendant must defeat the plaintiff's case by showing that the assessment and sale were not made in conformity to law, "that the property was not subject to taxes, or that the taxes had been paid previous to

sale, or that the property had been redeemed according to the provisions of this act." (See last paragraph of Section 7.)

A certificate of sale, signed by two of the tax commissioners instead of three, is held by the Supreme Court of the United States to be valid, as though it had been signed by the three. (12 Wallace, 398.) This decision is conclusive upon this court.

The testimony as to the non-concurrence of the third commissioner in the assessment, notice, and sale, as given in the record, does not invalidate the proceedings. . The neglect or refusal of one of the members of the Board to act, or his disapproval of the acts of the majority of the board, cannot affect the validity of the acts of the majority. Any other rule would make the legality of their proceedings entirely dependent upon the caprice or contumacy of the minority.

The respondent insists that the sale in June, 1863, and the certificate, were annulled and set aside by the Treasury Department at Washington, and that therefore the certificate and the sale became null.

The transcript of the proceedings of the Treasury Department does not show that any order was made setting aside that sale. The opinion of the Commissioner of Internal Revenue that the sale was irregular and void by reason of certain facts stated to him by the dissenting tax commissioner, is merely an opinion, and is not sustained by the Supreme Court in the case above cited; and, indeed, if the purchaser at that sale had any rights of property under it, we are not aware of any power in the Treasury Department competent to divest him or his grantee of such rights.

Upon the pronouncing of that opinion by the Internal Revenue Commissioner, it appears that the tax commissioners again advertised and sold the same property for the tax that another person purchased at the last sale, and that the property was redeemed from this sale.

Whether Robinson, the purchaser at the sale in June,

1863, on learning that the government "repudiated." that sale, surrendering the certificate of sale and receiving back the money from the commissioners, and becoming a purchaser at the second sale, may thereby be estopped in law, or in equity, from setting up any title in himself under that certificate, is not a question here. He had conveyed to Billings before he surrendered the certificate, according to the evidence, and his surrender of the certificate could not affect the title of Billings, if he had any title. It appears that there were included in the same certificate a large number of lots purchased at the same sale; and if all the lots so included were not conveyed by Robinson to Billings, this may account for the retention of the certificate by Robinson, instead of passing it over to Billings, and his subsequent surrender of it to the commissioners. The proceedings had, as shown, and the subsequent sale, do not affect the vested rights of the parties in interest, unless they assented to the proceedings, of which there is no evidence.

The counsel for respondent refers to an authority to show the effect of the surrender of a patent. On referring to the case (found in 1 Black, U. S.,) it is found that it treats of a patent issued under the laws regulating patent rights, and not to a title to lands.

The respondent insists, in his argument, that there is no evidence that the plaintiff acquired any rights prior to the surrender of the certificate. We do not understand that the respondent intends to impeach the integrity of his witness, Robinson, by insisting that Robinson, for a consideration, conveyed to Billings *after* he had surrendered this certificate and received the money for it. On the contrary, the testimony of Robinson and Billings both shows that Billings had left with Robinson money to be invested in the sales to take place in June, 1863; that it was so used; that Stickney, the third and dissenting commissioner, had urged Billings to purchase at this sale; that, within thirty days after it, Robinson executed his deed to Billings of the

lot in question, with other lots, which deed was left by Robinson in a store with a partner; and that Billings received the deed at Beaufort. Robinson states that Billings wrote to him to select the lots and send him the deed; that his impression was that he gave to plaintiff a mere quit-claim deed; that he "did not send it," but "left it in the store;" but he does not say that it was not sent or delivered to Billings with his consent or by his directions; nor is there any evidence that Billings ever knew of Robinson's surrender of the certificate; but it does appear that Robinson did not return to Billings the money consideration for the deed of this lot. That Robinson acted as the agent of Billings, in purchasing the lot, seems quite clear. A deed in the possession of the grantee, purporting to have been executed and delivered at a given date, is presumed to have been duly delivered to the grantee at the time named.

So far as the evidence in this record goes to the point, the proof of the execution and delivery of the deed at about the time of its date; that the lots were purchased for Billings, with his money, by Robinson, and conveyed for that reason to Billings, are *prima facie* established. (We comment upon this matter only because the point was argued before this court.)

The charge of the court, as contained in the record, is entirely sustained by what we have already said, except as to a single point. The court charged that "if the jury find, from the evidence, that plaintiff did not record his title in the records of Nassau county until after the purchase of the property by Mrs. G. Stark, and believe, from the evidence, that she had no notice of the title of the plaintiff, the conveyance of C. L. Robinson to the plaintiff would not be good or effectual, as against her, if she purchased for a valuable consideration."

This is the only portion of the charge excepted to by the plaintiff. The recording acts provide that no conveyance of real property shall be good in law, or in equity, against

creditors or subsequent purchasers for a valuable consideration, and without notice, unless the same be recorded in the office assigned by law for that purpose. The court misapprehended the purpose of the act in applying it to this case. The object of the law was to prevent fraud by parties concealing the fact of a conveyance and making a subsequent conveyance to a *bona fide* purchaser without notice. Had the deed of the plaintiff proceeded from the same grantor who subsequently conveyed to Mrs. Stark, the prior deed not being recorded, the statute would apply. But the plaintiff derives his title, if he has any, from the government through its power to collect revenue. No conveyance can be made by a former owner which will relieve property from the payment of taxes, or defeat a title lawfully acquired from the government through forfeiture and sale for taxes. The recording acts were not intended to promote, but to prevent fraud.

It is evident that the jury were misled by this instruction.

The judgment must be reversed, and a new trial granted.