SOUTHERN RY. CO. v. RHODES.

(Circuit Court of Appeals, Sixth Circuit. April 5, 1898.)

No. 548.

1. RAILROADS—NEGLIGENCE—THROWING MAIL POUCH FROM MOVING TRAIN.
   Where it is the practice of the post-office employés to throw mail pouches from moving trains onto passenger station platforms, so as to endanger passengers, it is the duty of the railroad company to notify passengers of the danger, and take such further steps as may be necessary to prevent the continuance of the practice; but this duty does not arise until the railroad company has had notice of such practice, either express, or implied from its long continuance.

2. APPEAL—PART OF RECORD LOST.
   Where, by reason of the accidental destruction of part of the record, it is uncertain on the appeal what action had been taken on a demurrer, and whether the defendant ever filed any plea, but it appears that the parties proceeded to trial on the merits without objection, the appellate court will assume that the demurrer was waived, and proceed on the assumption that the case was tried on the general issue, where the conduct of the parties is such as to render that course necessary in order to do justice between them.

In Error to the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

Leon Joroulmon, for plaintiff in error.

W. H. Payne, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge. This was an action brought by G. W. Rhodes, the defendant in error, against the Southern Railway Company, the plaintiff in error, to recover damages for personal injuries sustained by him through the alleged negligence of the railway company. The declaration alleged, in substance, that the plaintiff, on or about the 24th day of November, 1895, had purchased a ticket of the defendant's agent at Sherman Heights, in Hamilton county, Tenn., for passage to Charleston, a station on the defendant's road in the same state, and was in the depot at Sherman Heights, awaiting the arrival of his train; that he was notified by the ticket agent that the train would be due in a short time; that while so waiting he heard a train approaching, which he supposed was the one by which he intended to take passage, but was in fact one running in the opposite direction, and went out of the station, upon the platform in front, for the purpose of getting on board; that directly after he passed out of the door upon the platform, and while standing upon the platform, the train which he had heard (a passenger train upon the defendant's road) approached and passed said station, running at a rapid rate of speed, from which a mail pouch, containing mail, was thrown, and struck the plaintiff with great violence, knocking him down, and rendering him insensible for a considerable time, cutting and bruising his body and injuring his spine, in consequence of which he was for a long time disabled from doing any kind of work, and has been obliged to expend considerable money for medical attention, nursing, etc. The declaration further alleged that it had been the custom and rule at that station, long prior to the injury received by him, for the mail pouch to be thrown from the defendant's train at the point where it was thrown on that occasion, and that the defendant and its officers had notice of this custom; but that, notwithstanding such notice, the defendant had given no notice to the plaintiff of such custom, or of the danger of injury therefrom, and had not posted any notice thereof at that station or elsewhere, and also alleged that the plaintiff had no knowledge of such practice. The case was originally brought in the state circuit court for Hamilton county, Tenn. The case was removed, on petition of the defendant below, into the circuit court of the United States for the Southern division of the Eastern district of Tennessee, where the defendant filed a demurrer to the plaintiff's declaration, upon several grounds, the first and second of which are as follows:

"(1) Said declaration does not show any cause of action against defendant. (2) Said declaration shows that the injuries complained of were caused by the act of the mail clerk, and not by the act of the defendant, or any servant or agent of the defendant."

Nothing appears in the record to show what the action of the court was upon this demurrer, or that any plea was ever filed by the defend-

ant; but the case was tried in April, 1897, before the court and a jury. A part of the files and record was destroyed by fire, and the parties undertook to supply the loss by copies stipulated to be filed in lieu of the originals. No question was raised during the progress of the trial in respect of the pleadings, and it appears to have been assumed that the case was being tried upon an issue presented by a denial of the matters alleged in the declaration. The jury returned a verdict for the plaintiff for $2,200. The defendant moved for a new trial, which was denied upon the condition that the plaintiff remit from the verdict the sum of $800, which was done, and thereupon judgment was entered for the sum of $1,400. The defendant reserved certain exceptions to the rulings of the court during the progress of the trial, and brings the case here for review upon a bill of exceptions.

We have found some embarrassment in dealing with the case, on account of the uncertainty of the condition of the pleadings at the time of the trial in the court below; but having regard to the circumstance of the accidental destruction of part of the record, from which it may be inferred that the record at one time may have been more complete than the copies supplied show it to have been, and the evident fact that the parties intended to bridge any chasm in the pleadings by proceeding to trial of the merits upon a general denial of the declaration,—and no error is now assigned in respect to that feature of the case,—we think it right to treat the case upon the assumption that it was tried upon the general issue. The presumption which arises from the fact that the parties went to trial without a determination upon the demurrer is that the demurrer was waived. Basey v. Gallagher, 20 Wall. 670. And the lack of a pleading may be disregarded, or its previous existence and loss may be presumed, according to the circumstances, where the conduct of the parties has been such as to render that course necessary, in the appellate court, in order to do justice between them. The Georgia, 7 Wall. 32; Fretz v. Stover, 22 Wall. 198; Boogher v. Insurance Co., 103 U. S. 90. Upon the facts which the evidence tended to prove (that is to say, that the plaintiff had purchased his ticket, and was at the station, awaiting the arrival of his train, expected shortly to arrive), there could be no doubt that he was entitled to the rights of a passenger; and if, without negligence or carelessness, he went out upon the platform for the purpose of taking what he supposed was the train by which he was to travel, the railroad company was bound to take all due precaution to protect him from injury. Shear. & R. Neg. (2d Ed.) § 262. We do not understand that the company disputes this general proposition.

The assignments of error which are discussed in the briefs of counsel, and were argued at the bar, are these:

"(3) The court erred in refusing the request to direct a verdict for the defendant below. (4) The court erred in charging the jury that there was some proof tending to show that it was frequent or customary to discharge the mail in such a way and at such places as that passengers, being lawfully on the platform, would be hurt."

The fourth assignment appears to be a specification of a particular ground or reason advanced in support of the third. With respect to the proof referred to by the fourth assignment of errors, it appears

from the bill of exceptions that there was proof undoubtedly sufficient that the plaintiff received an injury substantially such as is described in the declaration, and at the place and under the circumstances stated in the declaration, unless it be with reference to the particular subject to which the challenge of the defendant in the court below was directed; that is to say, whether there was sufficient proof to justify the submission to the jury of the question as to whether it was frequent or customary to discharge the mail upon the platform in such a way and at such places as that passengers, being lawfully on the platform, would be hurt. It appears that the mail pouch, at the time of the accident, and prior thereto, was thrown off by an employé of the post-office department of the United States, who was working under rules and regulations, one of which was as follows:

"Under no circumstances shall the mail be thrown on the station platform from the train in motion, except by special instruction of the division superintendent. The utmost care should be taken in the deliveries to avoid injuries to persons or property."

And it was proven that there was no instruction from the division superintendent modifying this rule. The railroad company had no direct control over the matter: the carriage of the mail being under contract with the United States, and subject to the control of the government officials and employés in respect to the manner of delivering the mail pouch from the train. However, the duty to its passengers remained with the railroad company, if there was a dangerous practice of the kind alleged, and the company had notice of it, to take such steps as were necessary and appropriate to inform the department of any breach of its contract, and the violation of the department's rules which resulted in danger to passengers, and to take such further steps as were necessary to prevent the continuance of the practice. It is true that such a duty is not expressly charged in the declaration, and is only to be implied from the facts therein alleged; but no question upon that point, or in respect to any variance from the declaration, was raised in the court below, or is raised by the assignment of errors here. If the practice existed, and was not stopped, it was the duty of the railroad company, on getting notice of it, to give warning of the danger to its passengers.

We come now to the subject upon which the contest was made in the court below, and is now involved by the assignment of errors. The mail grab was a structure designed for the purpose of taking in the mail pouch when trains passed the station without stopping, and had no relation to the delivery of the mail which was destined for that place. The delivery might be made at any convenient point where it would not be attended with danger to passengers or others who might lawfully be there. In order to affect the railway company with the charge of negligence, it was necessary to prove that the company had notice of a practice of the postal employés to throw off the mail pouch at a place where it was dangerous. This notice might be express, or it might be implied from a long continuance of such practice. There was no proof of express notice. The plaintiff attempted to prove that it had been so long customary to throw off the mail so near to the depot as to endanger passengers that the railway company ought

to have had knowledge of it. For this purpose he called two witnesses, one of whom was B. M. Lawson, who testified that he lived for several years at Sherman Heights, not far from the depot where Rhodes received his injury; that he had been at the depot, and noticed the throwing off of the mails at that station, and that it was customary for the trains to run by and throw off the mails there; that he used to go over there some evenings, and watch the depot, at times when the operator had gone to supper, and when trains had passed he had sometimes noticed the delivery of the mail by throwing it off; that he had seen it thrown off several times, and had noticed the occurrence ever since he had been there, which was about eight years; that "sometimes they threw it off at the regular place (at the mail grab), and sometimes they threw it off between the mail grab and the depot. They did not always throw it off at the mail grab." He further testified that he did not observe any notice posted at the depot, giving warning to persons to look out for the mail sacks or anything else thrown from the train. Another witness produced by him was S. C. Lawson, who testified that he had lived at Sherman Heights for seven years; that he knew something about how mail was delivered from the trains; that it was thrown off all the way from the mail grab down to the depot, and below the depot; that he saw this frequently; that he had seen it thrown off in the sitting-room door, but did not know how long before; that "he had seen it thrown off a dozen times between the depot and the mail grab"; that he never observed any notice posted there, giving warning about the mail sacks being thrown off; that there was none; he had been around there very often, and was at the depot almost every day when that train came in, and saw the mail thrown off, and that that was the custom of delivering the mails. This was all the evidence produced in support of the plaintiff's averment that the custom of delivering the mail in a dangerous way had existed, and for so long a time that the railway company ought to have known it, before the time of the accident. The testimony of B. M. Lawson was, in substance, that he had on several occasions seen the mail pouch thrown off between the mail grab and the depot. But there was nothing in his testimony tending to show that this was improper, or attended with danger to any one. The testimony of S. C. Lawson is rather more to the point. But he fails to state when the acts of which he speaks occurred. It was incumbent on the plaintiff to show that they had occurred sufficiently long before the accident to support the presumption that the railway company had knowledge of it. It could not be fairly inferred from the testimony of this witness that there had been such a succession of such acts as were dangerous to passengers as could be said to make it customary, and for a period sufficiently long to charge the defendant with notice. He speaks of an occasion when he saw the mail pouch thrown into the door; but when it was, he does not state. He does not state where between the mail grab and the depot he had seen the mail thrown off, and for aught that he says, with the single exception of the occasion when he says he saw the mail pouch thrown into the door of the depot, he does not state, nor is it otherwise shown, that the localities where the mail fell were such as were used by passengers. We think this evidence was

not sufficient to justify a finding that a custom of throwing off the mail at that station at a place where it was dangerous to passengers had existed for a period sufficiently long prior to the accident as that the defendant was chargeable with notice of it. The court was requested by the counsel to instruct the jury to find a verdict for the defendant. For the error in refusing to give this instruction, the judgment must be reversed, with costs, and a new trial awarded.