ATLANTIC COAST LINE RAILROAD CO. v.
CORA GARRETT WEBB, Executrix.

150 So. 741.
Division B.
Opinion Filed October 27, 1933.

450

452

*W. E. Kay, J. L. Doggett* and *J. L. Doggett, Jr.,* for Plaintiff in Error;

*Evan Evans* and *T. W. McIlvaine,* for Defendant in Error.

BROWN, J.—This case was tried upon plaintiff's second amended declaration. It contained two counts alleging in substance that plaintiff was the executrix of the estate of J. H. Brown Scheuyeaulle, deceased; that said decedent left surviving no widow, child or other person dependent upon him for support. That while deceased was on August 12, 1927, upon the premises of defendant's passenger depot or station at Dover, Hillsborough County, Florida, for the purpose of taking passage on a passenger train then and there operated by defendant, the defendant carelessly and negligently propelled and ran said train against and upon said J. H. Brown Scheuyeaulle, whereby he was fatally injured and died on, to-wit: August 15, 1927; by reason whereof the estate of said deceased was deprived of his prosective earnings, to the damage of plaintiff in the sum of $50,000.00.

The only plea interposed by the defendant was the plea of the general issue, not guilty.

The jury rendered a verdict for plaintiff for $2,500.00. Defendant filed a motion for new trial which was denied, and writ of error was sued out to the judgment rendered on the verdict.

Plaintiff introduced four eye-witnesses, who testified to the manner in which the deceased was injured, and two witnesses as to the damage to his estate. At the close of plaintiff's case the defendant moved the Court for a directed

verdict in its behalf, which was denied. The defendant introduced no evidence.

The accident happened at Dover, a small station, near which station were located two stores. Dover is on defendant's main line, about sixteen miles from Tampa. The defendant had a small depot and platform at Dover, which station some of the witnesses testified was a flag station, at which trains stopped only when flagged. Whether defendant's officially published schedules showed Dover to be a flag station was not shown. It was testified that the defendant had an agent or operator there, whose duties were not clearly defined by the testimony, but he was not on duty at the time of the accident; that he usually closed his office or quit work about 5 o'clock in the afternoon, and that the train which struck the deceased came through Dover about on time, at 6:30 P. M.

It was good daylight, on a clear day, and the track in the direction from which the train was approaching was straight for about a mile.

The plaintiff's testator was some sixty odd years of age, in good health, vigorous and active for one of his age, and in the possession of all his faculties. From the time the approaching train came into sight about a mile away, he stood in the middle of the main track, opposite the depot, and about ten feet from the platform, facing and looking toward the train, and waving a large piece of paper, evidently endeavoring to flag the train down (and inferentially for the purpose of boarding the same as a passenger). He continued to stand in such place of danger, waving the paper and facing toward the train, until just before the train struck him, when he turned toward the platform to get off the track, but he failed to get out of the way in time to avoid being hit by the train. He was struck by the side

of the engine and thrown against the platform. The train, according to the various estimates of the witnesses, was coming at a speed of forty to fifty miles per hour and never slackened its speed until the impact took place. Nor did the engineer blow the whistle or ring the bell; but undoubtedly the deceased saw the train, and hence did not need any signals merely to warn him or apprise him of its approach. There was nothing to obstruct the engineer's view of the man standing in the middle of the track, nor was there anything to obstruct the latter's view of the approaching train. The train came to a stop about a quarter of a mile beyond the depot.

One witness testified that he had seen that train flagged before this occurrence by persons who usually stood in about the same place where Mr. Scheuyeaulle was standing. Another witness testified in substance that there was nothing to prevent the engineer seeing a person flagging the train who was standing on the platform; that he had seen the depot agent flag from the platform and stop the train. The Court then asked the witness this question: "People then did flag from the platform, did they?" To which the witness replied: "No, sir; not all the time." The Court then asked: "No, no, but sometimes?" And the witness answered, "Yes, sir; I have seen the depot agent do that." Then the witness continued: "Yes, I have seen other people flag from out in the tracks where Mr. Scheuyeaulle was standing; I have seen them flag in the same place Mr. Scheuyeaulle was flagging. Yes, the train stopped when they flagged it. I have let it go by two or three times, and the mail went on by anyway—I don't know."

The court charged the jury that the relationship of carrier and passenger existed between the decedent and the defendant, which required the defendant to execute toward

decedent care as far as human foresight could go, that is, the utmost care and diligence of very cautious persons.

The court charged the jury as to the meaning of negligence and proximate cause, and that the engineer and fireman in charge of a locomotive have the right to assume that an adult person whom they see upon or beside the track ahead of the approaching engine is in possession of his faculties and that he will obey the instinctive law of self-preservation by getting off the track, if already on it, or that he will not get on it if already off, following the rule laid down in Atlantic C. L. R. Co. v. Miller, 53 Fla. 246, 44 Sou. 247. The court also stated to the jury, without qualifications, the provisions of Section 7051, C. G. L., sometimes referred to as the "presumption of negligence statute," and also the provisions of Section 7052, C. G. L., as to diminishment of damages in proportion to the amount of default attributable to the plaintiff, where the plaintiff and the agents of the railroad company are both at fault.

But the court did not stop here. The court said: "The defendant, not having made it appear that their agent exercised all ordinary and reasonable care and diligence, having introduced no testimony herein, the presumption of negligence is against the defendant. The court charges you that under the evidence and the presumption aforesaid, the defendant is guilty of negligence, and you must find the defendant guilty and assess the plaintiff's damages in accordance with the instructions hereinafter stated. The undisputed evidence also shows that plaintiff's decedent was also negligent, and that his negligence proximately contributed to his death, and you will consider this in determining the amount of damages as hereinafter charged you." In the concluding portion of the charge, the court said: "Now,

gentlemen, your verdict in this case should be for the plaintiff, as I have charged you before."

Plaintiff in error contends that the court erred in charging the jury that the relationship of carrier and passenger existed, and in its language in charging the jury with reference to, and its construction that, Section 7051 C. G. L. required a verdict against the defendant; and also in affirmatively instructing the jury in effect that as a matter of law the defendant was guilty of negligence proximately contributing to causing the decedent's injuries, and that they must find a verdict in favor of the plaintiff, thus taking from the jury the right to determine whether the evidence showed that the defendant was guilty of negligence, and if so, whether such negligence was the proximate cause of the death of the decedent; plaintiff in error's contention being that under the testimony introduced the jury would have been justified in finding either that the defendant was free from negligence entirely, or that the negligence of the deceased was the sole proximate cause of the decedent's injuries, the defendant's negligence, if any, being merely a remote and not a proximate cause.

There is considerable discussion in the briefs as to whether or not the defendant's plea of not guilty amounted under Rule 71 to be admission of the existence of the relationship of carrier and passenger. In this connection, A. C. L. R. Co. v. Crosby, 53 Fla. 400, 43 So. 318, is cited by defendant in error. But that is not the question here. The declaration did not expressly allege that such relationship existed. It did allege, however, that plaintiff's testator "was upon the premises of defendant's passenger depot or station in said town of Dover for the purpose of taking passage as a passenger upon a passenger train then and there operated by the defendant," etc. Whether this allega-

tion was or was not admitted or denied by defendant's plea of the general issue, is immaterial, for the evidence as to decedent's conduct was sufficient to afford a reasonable inference that this allegation was true. So for present purposes we will consider the facts thus alleged as proven. But this raises the question whether the facts, thus alleged and proven, show as a legal result the existence of the relationship of carrier and passenger. *Probata* without *allegata* is of little avail. Thus the question is, does the allegation that the plaintiff's testator "was upon the premises of defendant's passenger depot or station of Dover for the purpose of taking passage as a passenger upon a passenger train then and there operated by the defendant" amount to an allegation of facts the legal effect of which is that plaintiff's testator occupied the relationship of a passenger to the defendant carrier at the time and place of the alleged injury? Our opinion is that this question must be answered in the negative. The allegation does not go far enough. It does not show that the plaintiff's testator was occupying on the depot premises, at the time of his injury, a proper place for a passenger to occupy; nor would the evidence have sustained such an allegation if it had been made.

In 10 C. J., 613-614, Section 1040, it is said:

"Actual entry into the carrier's vehicle of carriage is not necessary to create the relation of carrier and passenger, and one may become a passenger before entering such vehicle or before transportation has actually commenced. Where one with the *bona fide* intention of becoming a passenger, and with the express or implied assent of the carrier, goes on the carrier's premises, into the station, ticket office, or waiting room, at a time when such place is open for the reception of passengers intending to take passage, even

though, without the passenger's knowledge, it has been opened without authority, or goes from the ticket office or waiting room on to the platform or other proper part of the premises to take a seat in a car, he ordinarily places himself in the position of a passenger, although he has not purchased a ticket, or the agent has refused to sell him a ticket. However, in order that one may become a passenger, he must come on the carrier's premises and await the arrival of his train or car at a proper place, in a proper manner, and within a reasonable time before the arrival or departure of such train or car."

See also 5 R. C. L. 46.

It might not be out of place here to call attention to the following quotation from 10 C. J. 615-617, Section 1041:

"A person who, with the *bona fide* intention of becoming a passenger, enters or attempts to enter or board a train or car, even before he has got entirely in the car or other vehicle, becomes a passenger, although he may not have purchased a ticket before making such attempt, provided he does so at a proper place and time, and in a proper manner, although, if the person gets on board a train at an unusual or unauthorized place, if he is entitled to transportation, he becomes a passenger from the time he gets on board the train. This rule is particularly applicable where the train or the car has slowed down or stopped apparently for the purpose of taking a person on, in response to his signal to it so to do; but the mere signaling of the car to stop and the driver's intention to stop do not give rise to the relation, until the driver, by checking the speed of the car or by some other act, indicates an intention to accept such person as a passenger, and this rule is particularly applicable at a flag station. A person becomes a passenger of a street car as soon as he has set foot on the step or

running board, in the act of getting into the car, after it has stopped, with the intention of becoming a passenger."

: In L. & N. R. Co. v. Glasgow, 179 Ala. 251, 60 So. 103, ANDERSON, J., speaking for the Court, said:

. " 'The relationship of carrier and passenger is dependent upon the existence of a contract of carriage, express or implied, between the carrier and passenger, made by themselves or their respective agents; and this relation begins when a person puts himself in the care of the carrier, or directly within its control, with the *bona fide* intention of becoming a passenger, and is accepted as such by the carrier. There is, however, seldom any formal act of delivery of the passenger's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation; hence the existence of the relationship is generally to be implied from the attendant circumstances. But it is undoubtedly the rule that these circumstances must be such as to warrant the implication that one has offered himself to be carried, and the offer has been accepted by the carrier. And this, of course, necessarily involves the existence of the fact that the person must signify his intention to take passage, either by words or conduct, and those in charge of the car must assent by words or conduct to his becoming a passenger." Ala. City R. R. v. Bates, 149 Ala. 490, 43 South. 99, and cases there cited; *Id.,* 155 Ala. 348, 46 South. 776. While the foregoing is the general definition and rule as to the relationship of passenger and carrier, the books hold that it is the duty of the carrier to provide safe and convenient stations, and means of ingress to and egress from its cars; and if a person has the *bona fide* intention of taking passage by train, and goes to a station at a reasonable time, he is entitled to protection in these respects, as a passenger, from the moment he enters the

carrier's premises. North Birmingham R. R. Co. v. Liddi-coat, 99 Ala. 545, 13 South. 18; Hutchinson on Carriers, Sec. 1011. Says Mr. Elliot in his work on Railroads (Section 1579) : 'We think it safe to say that a person becomes a passenger when, intending to take passage, he enters a place provided for the reception of passengers, as a depot, waiting room, or the like, at a time when such a place is open for the reception of persons intending to take passage on the trains of the company.' We may add that when a person goes to a flag station, and occupies a place or platform, placed there by the carrier for the reception of passengers, within a short time prior to the expected arrival of a train, which he has the *bona fide* purpose to take, he thereby becomes to all intents and purposes, a passenger, and entitled at least to the protection as such from all injuries that may arise from passing trains. Railroad Co. v. Reynolds, 71 S. W. 516, 24 Ky. Law Rep. 1402; Railroad Co. v. Rhodes, 86 Fed. 422, 30 C. C. A. 157. This is upon the theory of an implied contract; that is, the party goes to the station at a time when invited to do so for the purpose of taking a train, and the jury can well infer a contract and presentation for carriage, and an implied acceptance by the carrier growing out of the presentation of the person at the place prepared for his reception and at a time for taking passage on the expected train."

In Ala. G. S. R. Co. v. Bell, 200 Ala. 562, 76 So. 920, it was held that one who, while at a railroad station waiting to take passage on a train, voluntarily gets on the track or dangerously near thereto, without stopping, looking or listening, is not only guilty of negligence, but may become a trespasser; but that under the evidence in that case it was a question for the jury to determine whether or not the plaintiff was a passenger at the time and place of the

injury, and whether or not she was guilty of contributory negligence. Thus it appears that one who properly goes upon station premises for the purpose of taking a train, although he may thus acquire the relation of a passenger, may afterwards forfeit that relationship by going out of the station building, or off of the platform or other portion of the premises, provided for the reception and use of passengers, and voluntarily going into a position of danger on the track.

A mere licensee, or trespasser, on a carrier's track, is entitled to no protection from the carrier except that it should exercise ordinary care to avoid injuring him after discovering his presence; or, as some of the cases express it, it should not wantonly or willfully injure him. Sec. 10 C. J. 875-876. A higher degree of care is required as to passengers. Sec. 10 C. J. 854-863, and Florida cases there cited, including Florida R. Co. v. Dorsey, 59 Fla. 260, 52 So. 963.

Our conclusion is that the Court erred in charging the jury in substance that as a matter of law under the evidence in this case the decedent was a passenger at the time and place of his injury.

Surely the middle of the main track adjacent to the station was not a part of the depot premises prepared by the carrier for the reception or use of passengers.

It would also appear from the above that, as applied to the facts of this case, there must have also been at least some conduct on the part of the defendant's agents or employees indicating that decedent's implied offer by flagging to become a passenger was, or at least presently would be, accepted, before the relation of passenger and carrier was re-established after he went to and stood upon the track, even if it should be conceded that the custom gave him the right to stand there. This might have been manifested by

the engineer's responding to the decedent's signalling, and slowing up or stopping the train, though it might not excuse his negligence in standing upon the track. But the evidence in this case shows that the engineer, whether he was justified in so doing or not, completely ignored decedent's signals. It might be observed here that, regardless of the evidence that it had been customary or usual for persons desiring to board this same train to stand in the middle of the track when flagging it, this custom could not change the fact that the railway company did not design such place for that purpose, but on the contrary had prepared a platform alongside the track for the use of its passengers, and, from which this train could have been flagged. Nor did this custom of flagging from the middle of the track, for which the railway company was not responsible, rob such procedure of its inherent negligence, at least when the approaching train was dangerously near at hand. Custom does not excuse what is inherently negligent. What ought to be done, is ultimately to be determined by a standard of reasonable prudence, whether usually complied with or not. S. A. L. R. Co. v. Watson, 94 Fla. 571, 113 So. 716. The deceased was a resident of Duval County. It does not appear that he had knowledge of the custom above referred to, unless the jury could have inferred it from his conduct, which is doubtful.

But whether the decedent was a passenger or offering to become one, if as the evidence indicates, it was the custom of the defendant to slow down and stop its trains when signalled or flagged by persons standing on the platform of this station, or on the track which ran alongside it, in the manner exercised by decedent, was it not the duty of the engineer, when so flagged, to have slowed down his train and stopped it; or at least, if circumstances were such as

to have excused or prevented him from stopping on this particular occasion, which is not shown, to have vigorously blown his whistle, by a series of short, sharp blasts, for instance, as a warning, and decreased the speed of his train as much as possible as he approached in dangerous proximity to the man standing in the middle of the track, in plain view of the engineer for a mile back from the station? We think it was. The general rule was correctly announced in F. C. & P. R. R. Co. v. Williams, 37 Fla. 406, 20 So: 558, and A. C. L. R. Co. v. Miller, 53 Fla. 246, 44 So. 247, that an engineer "has the right to presume, when an adult person, whom he sees upon or beside the track ahead of his approaching engine, is in possession of his faculties, and that he will obey the instinctive law of self-preservation by getting off the track, if already on it, or that he will not get on it, if already off; and in such a case, it would not be negligent on the engineer's part if he failed to attempt to stop his engine, unless he knew the party, and that he labored under some disability that prevented him from knowing his danger or that would prevent his getting or keeping out of the way, or unless he sees evidence of such disability from the party's actions or appearance, or that he cannot or will not get out of the way." But the custom of slowing down and stopping on being flagged at this station, shown by the testimony in this case and not rebutted, modifies to some extent the application here of the quoted rule, which was announced in cases wherein there was no evidence of such a custom. Our view is that there was sufficient evidence in this case, tending to show negligence on the part of the defendant's engineer, to have authorized submitting the question to the jury; and we are not clearly convinced that the learned trial judge was in error in instructing the jury that the defendant was negligent.

However, it is our opinion that the trial court committed error in affirmatively instructing the jury that they should find for the plaintiff. That took from the jury the question of proximate cause, which under the evidence in this case should have been submitted to the jury. Even if it be admitted that the evidence would have authorized the jury to find that the defendant was guilty of some negligence, it is clearly apparent that the decedent was also guilty of a high degree of negligence, and the evidence as a whole raises the somewhat difficult question whether or not the decedent's negligence in remaining on the track, and looking toward the train, until it was too late to get off in time to avoid being struck, although he had abundant opportunity to get off in time, was the sole efficient proximate cause of his injury; thus relegating the defendant's negligence to the classification of a remote cause. This was a question for the jury to determine under the evidence in this case. In this connection, see our recent case of *Merchants Transp. Co.* v. *Daniel*, wherein the doctrine of "last clear chance" and proximate cause are discussed.

The question of contributory negligence and proximate cause are frequently questions for the jury to determine. Frazee v. Gillespie, 98 Fla. 582, 124 So. 6.

In a case where there was evidence tending to show that both the defendant railway company and the plaintiff were guilty of negligence proximately contributing to the damage done to a truck at a street crossing, and it did not clearly appear that plaintiff's negligence was the sole proximate cause, the case was one for the jury, and the action of the court directing a verdict for the defendant railway company was reversible error. This was the holding in Mortellaro v. A. C. L. R. Co., 91 Fla. 230, 107 So. 528. It is generally a poor rule which will not work both ways.

If the testimony is conflicting, *or will admit of different reasonable inferences,* or if there is evidence tending to prove the issue, the case should be submitted to the jury for their finding on the facts. Gravette v. Turner, 77 Fla. 311, 81 So. 476; Florida C. & P. R. Co. v. Williams, 37 Fla. 406, 20 So. 558. And the case last cited holds that though the defendant may be guilty of some negligence at the time of the accident, it must be made to appear that such negligence was a *proximate cause* of plaintiff's injury. See also F. E. C. R. Co. v. Hays, 64 So. 274, 66 Fla. 589; Johnson v. L. & N. R. Co., 59 Fla. 305, 52 So. 195.

In Seaboard A. L. R. Co. v. Watson, 94 Fla. 571, 113 So. 716, it was said:

"It was the negligence which proximately causes or contributes to causing the injury or damage which creates legal liability. There may be concurrent causes of a single injury —concurrent negligence of two separate and distinct agencies—which, operating contemporaneously, together constitute the efficient proximate cause of the injury inflicted, and without either one of which the harm would not have been done. But if two distinct causes are successive and unrelated in their operation, they cannot be concurrent. One of them must be the proximate and the other the remote cause, and the law will regard the proximate as the efficient and responsible cause, disregarding the remote cause."

In the case last cited, it was held that the question of proximate cause was properly left to the jury to determine.

The mere fact that the defendant introduced no testimony and submitted the case upon the plaintiff's testimony does not change the rule that where the testimony will admit of different reasonable inferences on a material issue in a case, the determination of that issue should be submitted to the

jury. Such was the case here, on the issue of proximate cause. "The inference to be drawn from the evidence must be certain and incontrovertible, or they cannot be decided by the Court." Consumers Electric Light Co. v. Pryor, 44 Fla. 354, 32 So. 797.

Either party is entitled to the benefit of any evidence introduced upon the trial by the other party. Billings v. Starke, 15 Fla. 297.

The question of contributory negligence of the plaintiff may be submitted to the jury, even though not specially pleaded, if it affirmatively appears from the testimony introduced by the plaintiff. City of Jacksonville Beach v. Jones, 101 Fla. 95, 133 So. 562. And contributory negligence, for the purpose of reducing damages, may be considered when shown by the evidence of either party, though not pleaded. Atl. C. L. R. Co. v. Britton, 146 So. 842.

Our view is that where the plaintiff's evidence is such that reasonable men may differ as to what inferences should be drawn therefrom as to whether or not the plaintiff's negligence or that of the defendant constituted the proximate cause of the plaintiff's injury, the case should be submitted to the jury, even though the defendant introduces no evidence, and that this principle is not abrogated, where the defendant happens to be a railroad company, by reason of the provisions of Section 7051, Compiled General Laws. It is true that said section raises a presumption of *negligence* from injury "unless the company shall make it appear that their agents have exercised all reasonable care and diligence," but this does not necessarily mean that the proximate casual connection between the railroad company's negligence and the plaintiff's injury must also be presumed, or conclusively presumed, merely because the defendant railway company does not put any witnesses on the stand, where

the plaintiff's testimony shows that there is a serious question of whether there was such casual connection. Surely if the plaintiff's evidence had shown that plaintiff's testator had thrown himself on the track in front of the engine as the train passed the station, and this was all the evidence there was, there would have been no presumption of defendant's negligence from such facts, nor of proximate cause, either, even though the defendant put on no testimony whatever. The language of the statute does not require such a construction, and if it did, it would probably render the statute unconstitutional.

The question of proximate cause can be raised under the plea of the general issue. In Dowling v. Nicholson, 101 Fla. 672, 135 So. 288, this Court, speaking through the present Chief Justice, said: "While the plea of not guilty operates as a denial only of the breach of duty or wrongful act alleged in the declaration, and not of the facts stated in the inducement, and no other defense than such denial is admissible under such plea, * * * it is nevertheless the duty of the plaintiff in a common law action for damages to sufficiently prove the 'breach of duty' or the 'wrongful act' alleged by showing, by either direct or circumstantial evidence, that *it was the defendant who caused the act.*" While the defendant in the case just cited was not a railway company, the rule quoted is of general application.

This Court, in Florida E. C. R. Co. v. Townsend, 104 Fla. 362, 140 So. 196, also said:

"In an action against a railroad company for damages done by the running of its trains, the defendant may, under the general issue of not guilty, prove that the alleged injury was caused solely by the negligence of the party injured, or that the defendant's agents exercised all ordinary and reasonable care and diligence to prevent the injury. *Upon*

*proof of either by the probative force of legal evidence, the defendant will have sustained the statutory burden of proving its plea of not guilty.*

"The plaintiff under the general issue having shown the injury was *caused* by the running of the defendant's train, the statute put upon the defendant the burden of showing that its servants exercised all ordinary and reasonable care and diligence to avoid the injury. When such evidence is adduced the statutory presumption of negligence against the defendant ceases and the issue is to be determined upon a due consideration of the evidence without reference to the statutory presumption. S. A. L. Ry. Co. v. Thompson, 57 Fla. 155, 48 So. 750. This rule does not conflict with W. & A. R. R. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884." (Italics supplied.)

While there are expressions in some of our decisions which might be construed to mean that, if the plaintiff's evidence, regardless of its character and scope, shows that the injuries complained of resulted by reason of the plaintiff or his property having come into collision with a railroad train, the burden is then cast upon the defendant railway company by the statute to introduce evidence tending to show that its servants exercised all ordinary and reasonable care and diligence to avoid injury; yet these expressions can hardly be construed to mean that in cases where the plaintiff's own evidence is such that the jury might reasonably infer therefrom that it was the plaintiff's negligence, and not that of the defendant, which proximately caused the collision and resultant injury, the statute would require the court to take the question thus raised by the plaintiff's evidence from the jury and affirmatively instruct a verdict in favor of the plaintiff, merely because the defendant did not itself introduce any evidence

The statute is procedural, and does not change the substantive law. It has always been recognized in this jurisdiction that negligence of the defendant, proximately causing or contributing to causing the injury complained of, is the basis of the defendant's legal liability. The declaration must charge the defendant with negligence, and, in substance, that such negligence caused the injury and damage sued for. Do not the words of the statute, in effect, mean that upon proof of "damage done to persons or property by the running of the locomotive, cars or other machinery of such company," a presumption of negligence is raised, unless there is competent legal evidence in the case, whether introduced by the plaintiff or the defendant, which tends to rebut that presumption, and that when so rebutted the presumption ceases to exist? Sections 7051 and 7052 should be construed in *pari materia*. They were Sections 1 and 2 of the same original Act. And Section 7052 provides that "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence." And we have said in many cases that the presumption raised by the statute "is not such a presumption as will outweigh proofs, or that will require any greater or stronger or more convincing proofs to remove it; that all that the statute does in creating the presumption is thereby to cast upon the railroad company the burden of affirmatively showing that its agents exercised all ordinary and reasonable care and diligence, and here the statutory presumption ends." Seaboard A. L. R. Co. v. Thompson, 48 So. 750, 57 Fla. 155. But this "affirmative showing" may conceivably be made by the plaintiff's own witnesses on their direct examination, or by the company's cross-examination of them. If so, there

would be no need for the defendant to put on any witnesses of its own, so far as the statutory presumption is concerned.

We think that this construction of the statute is in harmony with the holding of the Supreme Court of the United States in Western & Atlantic Railroad v. Henderson, cited in the Townsend case, *supra*. The third, fourth and fifth headnotes in the Henderson case are as follows:

"3. A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment.

"4. The mere fact of collision between a railway train and a vehicle at a highway crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company, or of the traveler on the highway, or of both, or without fault of anyone.

"5. A State statute (Ga. Civ. Code, Sec. 2780) declaring that a railroad company shall be liable for damages to person or property by the running of its trains, 'unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company,' which is construed by the courts of the State as permitting the presumption of negligence thereby created to be given the effect of evidence, to be weighed against opposing testimony, and to prevail unless such testimony is found by the jury to predominate, is violative of the due process clause of the Fourteenth Amendment."

In this connection see Seaboard A. L. R. Co. v. Watson, 103 Fla. 477, 137 So. 719. The views of the Mississippi Supreme Court on a somewhat similar statute are given in Louisville & N. R. Co. v. Cuevas, 139 So. 397.

Our conclusion is that, as applied to the evidence in this case, the provisions of Section 7051 C. G. L. did not re-

quire or authorize the trial court to instruct a verdict in favor of the plaintiff and against the defendant.

For the errors above pointed out, the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.

Davis, C. J., and Whitfield, Ellis, Terrell and Buford, J. J., concur.

Whitfield, J. (concurring).—In an action by the executor or administrator against a railroad company under Sections 7047 (4960), 7051 (4964) Compiled General Laws, to recover damages for an alleged wrongful death of a person caused by the running of the defendant company's train, where the evidence *adduced for the plaintiff* would afford a sufficient legal basis for a finding by the jury that negligence of both the defendant and the injured party proximately contributed to the injury as shown, and such evidence would also sustain a finding, if made by the jury, that negligence of the injured party in remaining on the track in front of a rapidly approaching train, was the sole proximate cause of the injury, which latter finding, if made, would have prevented a recovery, Section 7052 (4965) Compiled General Laws, it is error to charge the jury that because the defendant adduced no evidence (Section 7051 [4964] Compiled General Laws) to show its employees were not negligent in causing the injury, the jury should find the defendant was negligent and therefore liable in damages, but if they should also find contributory negligence, the damages should be appropriately reduced under the statute. SeSction 7052 (4965) Compiled General Laws.

In this case negligence of the decedent as a contributory cause of the fatal injury clearly appears in that the decedent remained standing on the railroad track in front of a rapidly approaching train, until too late to avoid being

struck by the engine, and there was evidence from which the jury might reasonably have inferred negligence of the defendant as contributing proximately to the injury in that the speed of the train was not duly reduced when the decedent was or should have been seen by the engine crew, standing on the track waving the train to stop at a flag station, which in view of the verdict would have justified a fair though diminished recovery under the statute; but on the evidence fairly considered, the amount allowed by the verdict even without a reduction for the decedent's negligence, is in excess of the value at the decedent's death of the prospective earnings and savings that from the evidence could reasonably have been expected but for the death of the decedent, which is the extent of a recovery by an administrator or executor. Jacksonville El. Co. v. Bowden, Adm., 54 Fla. 461, 45 So. 735, 15 L. R. A. (N. S.) 451 n.; Section 7048 (4961) Compiled General Laws; M. & B. R. R. Co. v. May, 83 Fla. 524, 91 So. 553.

DAVIS, C. J., and TERRELL and BUFORD, J. J., concur.