348 So.2d 566 (1977)
REPUBLIC NATIONAL LIFE INSURANCE COMPANY, Appellant,
v.
Maria VALDES, Appellee.
Nos. 76-838, 76-966.
District Court of Appeal of Florida, Third District.
June 14, 1977.
Rehearing Denied August 24, 1977.
*567 Dixon, Dixon, Lane & Mitchell and Dennis L. Webb, Miami, for appellant.
Lawrence J. Spiegel and Richard E. Doherty, Hialeah, for appellee.
Before PEARSON and BARKDULL, JJ. and CHARLES CARROLL (Ret.), Associate Judge.
PEARSON, Judge.
These appeals are from a final judgment and a subsequent judgment for attorney's fees. Both appeals are by the defendant Republic National Insurance Company. The plaintiff, Maria Valdes, is the beneficiary of a policy providing for an additional payment upon the accidental death of the insured. The company paid the death benefit but denied liability for the accidental death. Mrs. Valdes brought this action to recover the accidental death benefits. The cause was tried before a jury and the plaintiff received a verdict. Judgment was entered, attorney's fees were assessed against the insurance company and these appeals followed.
Five points are presented on appeal. The first urges that the trial court should have entered a directed verdict for the defendant at the close of all the evidence because it appeared without issue that Mr. Valdes' *568 death was not accidental or that liability was precluded because of an exclusion in the policy which provided that there could be no recovery where the death was caused by the intentional act of another during an altercation in which the insured was the aggressor. The second point claims error in a jury instruction; the third claims error upon the denial of a motion for mistrial because of a comment of plaintiff's attorney in his opening statement; the fourth urges that the trial judge erred in failing to issue a guiding instruction regarding notetaking by the jurors; and the fifth claims that the attorney's fee allowed was excessive.
Defendant's first point has two aspects. The first is based upon the insuring clause which is as follows:
"When accidental bodily injury which was caused directly and independently of all other causes by external, violent, and accidental means occurs ... to the insured ... the company will pay in addition to any other benefit provided by the Policy: ..."
It is urged that the evidence taken as a whole refutes plaintiff's allegation that the death was accidental. It is argued that because the deceased's son, Julio Valdes, Jr., admitted upon cross-examination that he intended to shoot his father, therefore, the death could not be accidental.
The facts, viewed in the light most favorable to the jury's verdict, show that Julio Valdes, Sr., died on June 15, 1975, as a result of a gun shot inflicted upon him by his son Julio Valdes, Jr. The incident occurred at a place away from the home. The wife Maria Valdes was driving her car when it developed mechanical trouble. Mrs. Valdes called a friend of the family who was a mechanic and also called her son Julio Valdes, Jr., to come and pick her up in his car so that she could continue her journey. Shortly after the arrival of the mechanic, Nestor Morino, Sr., and his two sons, Julio Valdes, Sr., arrived in his own car. He was under the influence of intoxicants and was abusive to his wife and son. Afterwards, Valdes, Sr., announced that he was taking his wife home and his son protested that she should not go with Valdes, Sr., but rather with him, Valdes, Jr. An altercation without physical violence developed until the time that the son went to his car and returned with a heavy automatic pistol, which he initially concealed from his father but subsequently drew with his right hand, although Julio Valdes, Jr., was lefthanded.
Julio Valdes, Jr., testified on direct examination that the gun went off when his mother "jumped on top of me."[1] However, upon cross-examination by defendant's attorney, the son testified that he had intended to shoot his father.[2] The plaintiff mother testified that the gun went off when she grabbed Julio's hand.[3] The testimony of *569 two other eye witnesses was consistent with the mother's explanation of what happened.
The question thus presented is whether recovery is barred by the admission of the son that he had intended to shoot his father. The plaintiff presented all of the available witnesses to the shooting. The result was a conflict between the son's testimony on cross-examination and the other testimony, which would allow the jury to find that the shooting was accidental. Under the modern rule, a plaintiff is not irrevocably bound by testimony of his own witness. See the discussion in P. & N. Investment Corporation v. Rea, 153 So.2d 865 (Fla.2d DCA 1963); and cf. 53 A.L.R.2d 1229. The jury has the right to resolve conflicts on issues of fact arising from the testimony of several of the plaintiff's witnesses. Cf. the rule in Atlantic Coast Line R. Co. v. Webb, 112 Fla. 449, 150 So. 741, 747 (1933). The testimony as a whole is susceptible to a finding by a jury of reasonable men that when Julio Valdes, Jr., went to get his gun, he intended to shoot his father, if necessary, to protect his mother, but that he did not intend to kill his father, and that, thereafter, upon confronting his father with a gun, the gun was accidentally discharged by the action of his mother in attempting to seize the gun. In determining whether there is sufficient evidence to overcome a motion for directed verdict, all facts and reasonable inferences therefrom must be taken as true. See Gravette v. Turner, 77 Fla. 311, 81 So. 476 (1919); and Mellet v. Henry, 108 So.2d 69 (Fla.3d DCA 1959). A reviewing court must resolve all conflicts in the evidence and inferences therefrom in favor of the jury verdict. See Motes v. Crosby, 65 So.2d 478 (Fla. 1953); and J.A. Cantor & Associates, Inc., v. Devore, 281 So.2d 245 (Fla.3d DCA 1973). Further, a jury is the sole judge of the facts where the evidence is conflicting. See Watson v. Gallagher, 96 So.2d 472 (Fla.3d DCA 1957); and Crews v. Warren, 157 So.2d 553 (Fla.1st DCA 1963). We conclude, therefore, that the evidence was sufficient to withstand defendant's motion for directed verdict upon the issue of whether the death was accidental. This is especially true in view of the fact that the judge properly instructed the jury that
"... I charge you that if you find Mr. Valdes, Jr. intended the act which caused Mr. Valdes, Sr.'s death, although he may not have intended his death, the recovery by Mrs. Valdes ... is precluded by the policy of insurance . ."
The second aspect of the point claiming error upon the failure to direct a verdict for the defendant is defendant's claim that the evidence clearly shows without issue that the deceased was the aggressor and that, therefore, recovery is barred under the following exclusion in the policy:
"The company shall not be liable hereunder for any loss caused by or contributed to by: (a) ... the intentional act of another during an altercation in which the insured was the aggressor; ..."
The defendant urges that proof that the deceased was under the influence of intoxicants and that he was loud and aggressive together with his abusive words to his wife and son made him the aggressor in the altercation which followed. A review of all the evidence convinces us that a jury of reasonable men could find that inasmuch as no physical violence occurred until the son went to his car and returned with a pistol that, at that time, the son became the aggressor. We, therefore, conclude that no error has been shown upon the trial court's refusal to direct a verdict under the above-quoted exclusion of the policy.
Appellant's second point claims error upon an instruction that where one dies as a result of a gun shot wound, the presumption arises that the man was killed by accidental means. This instruction is properly *570 given only in cases where there is no direct evidence of the shooting. Nevertheless, any possibility of error was eliminated by the fact that the trial court immediately followed the statement with an instruction that the presumption disappears upon an introduction of any evidence which tends to overcome it.[4] There was clearly evidence in this case to overcome the presumption of an accident and the issue before the jury was clearly presented from the outset of the case. We find this to be harmless error. See Florida Power & Light Company v. McCollum, 140 So.2d 569 (Fla. 1962).
Appellant's third point claims error upon a statement made by plaintiff's attorney in his opening address to the jury that plaintiff's son, who had shot the insured, had been charged with manslaughter and had pled "no contest." Appellant argues that such a reference violates the rule that a defendant's conviction or acquittal is not admissible in a civil suit. See Eggers v. Phillips Hardware Company, 88 So.2d 507 (Fla. 1956). The reason for this rule is the obvious difference in the objects, procedures and results in civil and criminal proceedings. In this case, we find no reversible error inasmuch as the conviction of manslaughter was not an exoneration of the son and could not have unduly influenced the jury especially in view of the court's instruction that the statements of counsel must not be accepted as evidence.
The fourth point presented claims error by the court in not instructing the jury not to take notes. The record fails to support appellant's allegation either that the notetaking occurred or that the court observed or had his attention called to the taking of notes by the jury. We, therefore, find no error and expressly point out that our attention has not been called to a case in this state holding that such an occurrence constitutes reversible error.
Appellant's last point urges that the attorney's fee allowed by the court pursuant to Section 627.428, Florida Statutes (1975), was so excessive as to be an abuse of discretion. The record shows that the trial court held an evidentiary hearing; however, the record bears no transcript of that hearing. The appellee's attorneys moved for an attorney's fee of $11,000 and were awarded $8,640. The amount of the judgment was $12,000. In this respect, we would point out that factors other than the amount of the final judgment may be considered in determining the amount of an attorney's fee. See Penn-Florida Hotels Corporation v. Atlantic National Bank of Jacksonville, 126 Fla. 344, 170 So. 877, 880 (1936). We note that despite the appellant's arguments that this case did not involve issues novel in nature or a trial of long duration or witnesses of such expertise that counsel would have to make special preparation for the purpose of questioning, nonetheless, we find that this case was couched in an unusual factual setting presenting a novel application of the law to the issues involved. Therefore, in this light, we cannot say that the trial court abused its discretion. See Robertson v. Robertson, 106 So.2d 590 (Fla.2d DCA 1958).
Affirmed.
NOTES
[1] "Q. You pulled the gun out with your right hand?

A. Yes.
Q. What were you going to do?
A. Just hold it back since I am left-handed, you know, keep the peace. But it didn't work out that way.
Q. Where was the gun aimed?
A. It was down all the time.
Q. Down by his feet?
A. Yes, but when he got close, I just from back here, I had it towards my side and I moved it over like this to scare him like, but my mom jumped on top of me and it went off.
Q. Did you intend to kill your father that night?
A. No."
[2] "BY MR. LANE [defendant's counsel]: A. Mr. Valdes, did you ever tell anybody that you intended to shoot your father that night, drop him on the ground so he couldn't move?

A. That's correct.
Q. Huh?
A. That's correct.
Q. You intended to shoot him?
A. Not to kill him. No, to shoot him.
Q. With a .357 Magnum, correct?
A. That is correct.
Q. Loaded with hollow point bullets?
A. Loaded with bullets.
Q. And you had another box of bullets in your car, didn't you?
A. Yes, I think so."
[3] "Q. Before the gun went off, did your husband see that gun or do you think he did?

A. No.
Q. Was it visible?
A. No.
Q. Now, you testified that your boy pulled the gun out of his pants and then 
A. Yes.
Q.  what did you do when you saw the gun?
A. When I saw  when I saw Julio, I was grabbing Julio to don't fight with the father, because the father coming to get me to get home. I feel the gun and Julio and when Julio saw me close to him to stealing the gun, Julio pulled the gun. And then when I grabbed Julio's hand, then went the gun got off. That's how my husband coming today."
[4] "Now, there is a presumption in law that a man killed by being shot has met his death by accidental means. However  and you should know that a presumption is a conclusion, that is it is something deduced from the facts which expressly directs one to make from the particular fact or facts found or otherwise established in the trial. However, any presumption disappears upon the introduction of evidence which tends to overcome the presumed fact."