INTERNATIONAL SHOE COMPANY, a corporation, PETERS SHOE COMPANY, a corporation, and MABEL ANNABELLE BATES, as Administratrix of the Estate of W. I. Bates, v. T. W. HEWITT, as Administrator of the Estate of Freda Hewitt, deceased.

167 So. 7.
Division A.
Opinion Filed March 31, 1936.
Rehearing Denied April 17, 1936.

*Snedigar & Baya,* for Plaintiffs in Error;

*Patterson, Blackwell & Knight,* for Defendant in Error.

PER CURIAM.—This is the fourth appearance of this case here. For its former appearances see Hewitt v. International Shoe Co., 110 Fla. 37, 148 So. 533; Hewitt v. International Shoe Co., 114 Fla. 743, 154 So. 838; Hewitt v. International Shoe Co., 115 Fla. 508, 155 So. 725.

T. W. Hewitt, as administrator of the estate of Frieda Hewitt, deceased, instituted an action for the wrongful death of the latter against the International Shoe Co., Peters Shoe Co. and Mabel Annabelle Bates, as administratrix of the estate of W. I. Bates, deceased. The declaration was filed June 6, 1932. Default judgment was, on July 5, 1932, entered against International Shoe Co. and Peters Shoe Co. for failure to plead, answer or demur to the declaration. This default was vacated on July 20,

1932, and defendants were allowed until the rule day in August, 1932, in which to plead. On July 27, 1932, the defendants made an unsuccessful attempt to remove the cause from the Circuit Court of Dade County to the U. S. District Court. See Hewitt v. International Shoe Co., 114 Fla. 743, 154 So. 838. On August 2, 1932, another default was entered against all of the defendants for failure to plead. On August 17, 1932, the defendants made a motion to vacate the default that had been entered against them on August 2, 1932, and tendered certain proposed pleas. This motion was denied by the court on September 27, 1932. The defendants, on December 3, 1932, filed a motion to vacate the order of September 27, 1932, which order had refused to vacate the default of August 2, 1932. This motion was opposed by plaintiff. On January 3, 1933, the court vacated the order of September 27, 1932; granted the motion of August 17, 1932, asking that the default entered August 2, 1932, be declared null and void; and allowed defendants to file instanter the original pleas tendered with the motion of August 17, 1932. For plaintiff's failure to join issue on the pleas so filed, the court, on January 4, 1933, entered judgment *non prosequitur* in favor of defendants. From that judgment, plaintiff took writ of error. Defendants' motion, made in the Supreme Court, to dismiss the writ of error, was denied . Hewitt v. International Shoe Co., 110 Fla. 37, 148 So. 533. Upon consideration of this writ of error on its merits, it has held that the default of August 2, 1932, was validly entered, and that it was beyond the jurisdiction of the court to enter an order, 120 days later and in a subsequent term of court, opening up the default for the purpose of letting in pleas; and that it was error to dismiss the proceeding as on a *non prosequitur* for failure to join issue on pleas that had no proper standing

before the court. Hewitt v. International Shoe Co., 114 Fla. 743, 154 So. 838. A motion to recall the mandate of the Supreme Court for the purpose of rehearing was denied. Hewitt v. International Shoe Co., 115 Fla. 508, 155 So. 725.

The gist of the action is that Frieda Hewitt was wrongfully killed while riding in an automobile with W. I. Bates, as a gratuitous guest and invitee of the latter. Both Frieda Hewitt and W. I. Bates were killed in the same accident. Bates was at the time agent of International Shoe Co. and Peters Shoe Co.

After the cause had been remanded the trial court, on June 12, 1934, vacated the order of January 3, 1933, vacating the default and allowing defendants to file pleas; reinstated the default entered agaainst defendants on August 2, 1932; and struck the pleas filed by defendants.

On June 25, 1934, the defendants filed their motion to vacate the default judgment entered on August 2, 1932, on the ground that in and by said default judgment, the defendants, International Shoe Co. and Peters Shoe Co., are charged individually, and the defendant, Mabel Annabelle Bates, as administratrix of the estate of W. I. Bates, deceased, is charged *de bonis propriis,* and that said judgment is null and void, and entry thereof constitutes error of law. The court denied this motion on July 5, 1934.

Upon the sole issue of the damages recoverable by the plaintiff, if any, the jury, on July 9, 1934, returned a verdict in favor of plaintiff and assessed his damages at $4500.00.

Subsequently, Mabel Annabelle Bates, as Administratrix of the estate of W. I. Bates, deceased, made a motion for a venire *facias de novo* on the grounds that the verdict was so defective that a judgment could not be rendered upon it,

and that it appeared from the record that the jury should have found for the defendant.

At the same time, the International Shoe Co., and the Peters Shoe Co. filed their separate and several motions for a venire *facias de novo* on the identical grounds set forth above.

In like manner, the defendants, on the same date, filed separate motions for a new trial.

On August 3, 1934, the court separately and severally denied and overruled the motions for new trial and for venire *facias de novo*.

The final judgment entered in the cause on July 16, 1934, contained the following:

"It is therefore considered, ordered and adjudged, that the plaintiff, T. W. Hewitt, as Administrator of the estate of Frieda Hewitt, deceased, do have and recover of and from the defendants, International Shoe Company, a corporation, Peters Shoe Company, a corporation, and Mabel Annabelle Bates, as Administratrix of the estate of W. I. Bates, the sum of Four Thousand Five Hundred Dollars ($4,500.00), together with the cost of this action, in the sum of $63.35, for which let execution issue."

From the final judgment, defendants took writ of error. Each defendant presented to the judge, as a guide for making up the bill of exceptions, their several assignments of errors; but all of the defendants jointly filed the complete assignment of errors.

The International Shoe Co. and Peters Shoe Co. were sued jointly in this action with Mabel Annabelle Bates, as Administratrix of the estate of W. I. Bates, deceased. Judgment was rendered against all three defendants jointly.

The question as to whether an administratrix in her representative capacity could be joined as a party defendant

with corporations in their individual capacities in the same action or in the same judgment was not properly presented in any of the former appearances of this case here. This question is properly presented in this case, and it is argued at length in the briefs of counsel. In the case of Hewitt v. International Shoe Co., 114 Fla. 743, 154 So. 838, we decided that the trial court could not, after the expiration of 120 days and in a subsequent term of court, vacate a default judgment that had been properly entered.

In contract actions, a valid judgment cannot be rendered against the personal representative of a deceased person and a co-obligor in the same judgment, as the one is charged *de bonis testatoris* and the other is charged *de bonis propriis,* forms of judgment that the rules of law governing in the same judgment. City of Orlando v. Gooding, 34 Fla. 244, 15 So. 770; Lee v. Puleston, 102 Fla. 1079.

In tort actions it has been held that where one of the defendants dies pending suit, his personal representative cannot be brought by *scire facias* on the record, as the same judgment cannot be rendered and the same execution asserted against the surviving defendants and the personal representative of a deceased one. 24 C. J. 808, citing Mechanics & Tradesmens Insurance Co. v. Spang, 5 Pa. St. 113.

"Upon the death of one joint tortfeasor, if the action survives, the survivors and the representatives of the deceased may each be sued separately, or the survivors, if more than one, may be sued jointly. But the representative of the deceased and a survivor cannot be sued jointly because one is to be charged *de bonis testatoris* and the other *de bonis propriis.*" 15 Encyclopedia of Pleading & Practice 562, citing Johnson v. Cunningham, 56 Ill. App. 593; Union Bank v. Mott, 27 N. Y. 633; Lodge v. Burton, 3 N. J. L. 120.

The proper method of raising objection to the improper joinder of parties defendant is by plea in abatement when it does not appear on the face of the declaration, and by demurrer when it does appear on the face of the declaration. Crandall—Florida Common Law Practice 8; see Sections 4208-4210 C. G. L. However, in the instant case, the fault of misjoinder of the parties defendant was not objected to in the trial court until after the default judgment had been reinstated by direction of this Court. As already indicated, in the case of Hewitt v. International Shoe Co., *et al.*, 114 Fla. 743, 154 So. 838, we ordered that the default judgment against defendants, which had been vacated by the trial court, be reinstated. That decision became the law of the case; and it impliedly disposed of the matter of misjoinder of defendants by ordering the default judgment reinstated. The general rule is that objections to misjoinder and non-joinder of parties must be seasonably and regularly made to be available by complaining parties. See Campbell v. Knight, 92 Fla. 246, 109 So. 577; Edgar v. Bacon, 97 Fla. 679, 122 So. 107; Kittredge v. Race, 92 U. S. 116, 23 L. Ed. 486; 15 Encyc. Pldg. and Prac. 757-763. Failure to make seasonable objection in the trial court to the misjoinder of defendants in this, an action of tort, may be considered as an implied waiver of all such objections, and defendants cannot be permitted, on the present writ of error, to now raise this question.

Under the principle of *respondent superior* an employer is liable in damages for the negligence of an employee resulting in the infliction of fatal injuries upon another; and an action for damages may be maintained against both the employer and employee, whether the employer participated directly in the injury or not (Weaver v. Hale, 82 Fla. 88, 89 So. 363), if the wrongful act was done while the em-

ployee was acting within the scope of his authority as such employee. Stimson v. Prevatt, 84 Fla. 416, 94 So. 656.

In the case of Penn v. Pearce, 121 Fla. 3, 163 So. 288, recovery was allowed by the widow of a deceased locomotive fireman against the executrix of an automobilist, when both the fireman and the automobilist were killed in the same accident. So in the instant case recovery by the plaintiff is not precluded due to the fact that W. I. Bates, a tortfeasor, was killed in the same accident with plaintiff's decedent.

The several questions presented by plaintiff in error relating to the attempted removal of the cause from the state court to the federal court have either all been answered in Hewitt v. International Shoe Co., 114 Fla. 743, 154 So. 838, or it becomes unnecessary to answer them under the disposition made of this case. The action of defendants in proceeding with the case by invoking the jurisdiction of the state court, after removal of the cause to the federal court had been refused, was a waiver of the objections to the court's refusal to remove the cause to the federal court. See Anderson v. United Realty Co., 222 U. S. 164, 32 Sup. Ct. 50, 56 L. Ed. 144.

This action is brought by the administrator for the wrongful death of the decedent, under Sections 7047-7048 C. G. L. The Trial court permitted plaintiff, over objection, to prove funeral expenses of $553.00. The rule of damages to be applied in such cases was laid down in Jacksonville Electric Co. v. Bowden, 54 Fla. 461, 45 So. 755, 15 L. R. A. (N. S.) 451, 2nd headnote, as follows:

"Where an administrator has a right of action under the statute imposing a liability for the wrongful death of a person, he may recover the value, at the decedent's death, of the prospective earnings and savings that, from the evi-

dence, could reasonably have been expected but for the death of the decedent."

And in Fla. East Coast R. Co. v. Hayes, 67 Fla. 101, 64 So. 504, we held that in an action of this kind, an administrator may recover only the present monetary worth of the decedent's life to an estimated prospective estate to compensate for the estate that the decedent probably would have accumulated to leave at his death. This is a purely statutory action, and under the statute as previously interpreted by this court, the administrator cannot recover for funeral expenses. We admit that the decisions in other jurisdictions are by no means unanimous on this question. See 17 C. J. 1339, 1340, and Davis v. N. Y. Central Etc. R. Co., 233 N. Y. 242, 136 N. E. 277; Horning v. Holt, 153 Wis. 101, 140 N. W. 1102. But the reasoning of our own decisions as applied to other elements of recoverable damages sustains our conclusion. Furthermore, the declaration did not claim damages for funeral expenses, which was in the nature of special damages which should be specifically claimed. Sutherland on Damages, 4th ed., Section 1278, page 4951.

Several exceptions were taken in the trial court to the sustaining of objections to questions which might have proved that a few weeks prior to the fatal accident the decedent visited several times a married couple who dissipated considerably, the purpose being to show that, because of this, decedentt's expectancy of life was shorter than the average expectancy as shown by the life tables. It would have been admissible for plaintiffs in error to show, if they could, that the decedent *herself* was a young woman of dissipated habits. Any competent evidence reasonably tending to show that decedent's normal expectancy of life was either less or greater than that shown by the life tables

might have been admissible, but we would not be authorized to reverse this case because the court refused to let appellants attack the reputation of third parties merely because the decedent went to see them in their home a few times shortly before her death. That the deceased young lady had some acquaintances who drank too much was no proof that she had acquired habits of dissipation. Indeed, there was no proof offered to show that decedent's habits were bad, or deleterious to her health.

The decedent, Miss Hewitt, was twenty-two years of age and a life expectancy of about forty years. There was evidence tending to show that she enjoyed good health and had a pleasing personality. She had attended the public schools until she reached the 11th grade; had taken a short course in music and expression, and a business course of approximately four months. She had worked in a bank in Vero Beach from 1925 to the summer of 1926, doing clerical and stenographic work, at a salary of $100.00 per month; since which time, and until her death in 1930, she had earned no money, but had lived with her parents and assisted with the housework. Of course, this evidence would not make it possible for the jury or any one else to predict with any certainty what, if any, estate this young lady would have accumulated from her own earning power had she lived out the period of her life expectancy. Whatever sum the jury might have estimated in this regard must have been reduced to its present value. Therefore the jury must have generously indulged the hope that the decedent, if she had lived, would have accumulated a rather large estate, much larger than the average, which, reduced to its then present value, would have amounted to about $4,000.00, assuming that $553.00 of the verdict of $4,500.00 was based on the funeral expenses. In order to arrive at any verdict

whatever in cases of this kind, the jury must of necessity deal in probabilities. These probabilities should, however, be as reasonable as the nature of the case permits, and based upon the law of averages derived from actual experience, as nearly as possible. And it is a matter of common knowledge that the average person saves very little above living expenses and leaves very little if anything in the way of an estate. So, even if it be admitted that the decedent's potential earning capacity was somewhat above the average, still the verdict was excessive. In cases of young people, whose death comes before they have had full opportunity to prove their ability to earn and to save, the jury has a hard task, and their verdict may be often based on generous conjecture rather than calm judgment. Some of our cases bearing on this difficult question are Jacksonville Electric Co. v. Bowden, *supra;* Florida East Coast Ry. Co. v. Hayes, *supra;* Marianna & B. R. Co. v. May, 83 Fla. 524, 91 So. 553; Union Bus Co. v. Smith, 104 Fla. 569, 140 So. 631; Atlantic Coast Line Ry. Co. v. Woods, 110 Fla. 147, 148 So. 542; Atlantic Coast Line Ry. Co. v. Webb, 150 So. 741, 112 Fla. 449. Deducting the item of funeral expenses, our conclusion, in the light of our previous decisions, is that the verdict and judgment, even after making such deduction, would still be excessive.

If therefore the plaintiff in the court will, within fifteen days after the going down of the mandate herein, enter a remittitur of $2,000.00 of the judgment as rendered, judgment for the remainder, $2,500.00 and court costs, as of the date of the original judgment, shall stand affirmed; otherwise, the judgment will be reversed and the cause remanded.

Affirmed with remittitur.

598

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.