## THE FRIENDSHIP II.

### CHAMBERS v. JUST et al.

### No. 9218.

Circuit Court of Appeals, Fifth Circuit.

June 21, 1940.

Rehearing Denied July 31, 1940.

HUTCHESON, Circuit Judge, dissenting.

————◆————

Bertram R. Coleman, of Miami, Fla., and Raymond Parmer, of New York City, for appellant.

M. L. Mershon and W. O. Mehrtens, both of Miami, Fla., and Samuel W. Fordyce and Walter R. Mayne, both of St. Louis, Mo., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This case involves claims by the appellees, Charlotte Cross Just and Anne Elise Gruner, for damages for personal injuries due to carbon monoxide gas poisoning occurring on board the yacht Friendship II, owned at the time by Henry C. Yeiser, Jr. The yacht was built in New Jersey, but it does not appear where she is enrolled. The suit began in the United States District Court for the Southern District of Florida, Miami Division, as a petition for limitation of liability filed by appellant as duly qualified executrix of Yeiser's estate. The petition denied liability and in the alternative claimed a limitation to the value of the offending vessel. This appeal, taken under the authority of the Act of April 3, 1926, c. 102, 28 U.S.C.A. § 227, is from an interlocutory decree rendered on the merits in favor of the claimants and denying limitation.

From Friday, February 28, until Monday, March 2, 1936, the appellees were guests on board the Friendship II on a fishing trip and cruise. They were at all times within the territorial limits of the State of Florida. The appellees had been assigned a

double stateroom at the stern of the vessel directly above the bilge, through which ran the exhaust pipes from the yacht's engines. On Monday morning, when the yacht was nearing Miami on the return trip, the appellees were discovered unconscious in their beds. They were treated upon their return, but allegedly received injuries of a permanent as well as of a temporary nature. Five days after the return, from causes unrelated to the accident, Yeiser died. These claims were filed against his estate.

■ The appellant has questioned the sufficiency of the evidence to support the findings of the District Judge. The Friendship II is a cruising houseboat yacht powered by twin gasoline motors. At the time of the accident there were several holes in both the port and the starboard exhaust pipes which passed directly through the bilge. The windows of the stateroom which the appellees were using were closed, but in the walls were a number of vents and openings so designed that air from the bilge would circulate through the stateroom. The District Judge found that carbon monoxide gas in the form of exhaust fumes which were escaping from the pipes collected in the bilge and, passing through the vents into the stateroom, overcame the appellees while they were asleep and were the proximate cause of the injuries complained of. These findings were based on the oral testimony of the witnesses taken in open court. The District Judge had the opportunity which we do not have of facing each witness and of judging at first hand the weight of what he had to say. Every finding of fact which the judge made is supported by evidence. Where there is a conflict of evidence we are not in position to say that the appellees' evidence is unworthy of belief. Colvin v. Kokusai Kisen Kabushiki Kaisha, 5 Cir., 72 F.2d 44.

■ A second assignment of error is to the effect that Yeiser owed no duty to make the yacht safe for the appellees, they being mere gratuitous invitees on board the vessel. Yeiser was familiar with gasoline motors. He had been told at the time he purchased the Friendship II that the port exhaust pipe should be renewed. Twice before, to Yeiser's knowledge, persons aboard the yacht had been affected by carbon monoxide gas, the last time being in September, 1935, when Yeiser's two sons were overcome in the same stateroom. At that time, a more or less superficial investi-gation having been made, no defects were discovered. Assuming that the gas was blowing in over the stern, Yeiser simply repeated a previous order to keep the rear windows closed. Nevertheless, he had been put on notice of the defective condition of the pipes and of the tendency of the gas to enter the stateroom. He was cognizant of the ultimate cause and of the result, and, whether or not he properly connected the two, he must be held to have known of the dangerous condition existing aboard the vessel and of the possibility of injury to the appellees at the time he assigned the stateroom to them. Knowing of the condition, he is responsible for failure to remedy the defect or at least to warn the appellees of its existence. Restatement of Torts, Sec. 342.

■ Responsibility for the injury having been established, it remains to be determined whether the appellant is entitled to a limitation of liability. Since a proper inspection of the vessel would have shown the defective condition of the pipes, and Yeiser was himself present and in charge, the injuries were not occasioned without the knowledge or privity of the shipowner. Because he failed to make such an inspection, he may not have limitation. The Republic, 2 Cir., 61 F. 109; Christopher v. Grueby, 1 Cir., 40 F.2d 8.

■ The question principally contested in the case concerns the effect of Yeiser's death upon the claimants' causes of action in personam. It is admitted that the action in rem survives and that the claimants may recover up to the value of the ship. The Ticeline, D.C., 208 F. 670. However, the common law rule is that a personal right of action abates upon the death of either party, and there are admiralty precedents to the same effect. Crapo v. Allen, Fed.Cas.No.3,360; In re Statler, D.C., 31 F.2d 767. Upon the basis of these precedents, the appellant has strenuously questioned the applicability of a decision of the Supreme Court of Florida holding that the death of the tort-feasor does not extinguish a right of action for the recovery of purely compensatory damages for personal injuries. Waller v. First Savings & Trust Co., 103 Fla. 1025, 138. So. 780. The decision was by a divided court, and based upon the provisions of the local constitution and a local statute. The argument challenges the use of State laws and decisions as rules of decision in cases within the maritime jurisdiction of the federal

courts and urges that the subject is properly one which requires uniformity.

It is no longer questionable that a tort occurring upon navigable waters of a State of the United States is within the maritime jurisdiction of the federal courts. De Lovio v. Boit, Fed.Cas.No.3,776; Waring v. Clarke, 5 How. 441, 12 L.Ed. 226; The Propeller Genesee Chief v. Fitzhugh, 12 How. 443, 13 L.Ed. 1058. Nor may the power of Congress, by virtue of the paramount maritime jurisdiction of the United States, to prescribe substantive rules of law with respect to maritime torts be challenged. Detroit Trust Co. v. Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176. Where the injured person dies as the result of an injury the common law afforded no action for the wrong either to the estate of the deceased or to his dependents. Lord Campbell's Act in England, and similar statutes in the States of the United States have changed this rule, and it was never the rule of the civil law. Admiralty courts have held that where the law of the country of the ship's flag allows recovery for a wrongful death on land a libel will lie for such a death at sea. The Hamilton (Old Dominion S. S. Co. v. Gilmore), 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264, La Bourgogne (Deslions v. La Compagnie Generale Transatlantique), 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973. The matter is now put under a uniform rule by federal statute. 46 U. S.C.A. §§ 761–768.[1] Congress has made no statute touching the case where the tortfeasor dies before suit or judgment. Here also the common law held that there could be no recovery against the personal representative. The reason given by Blackstone, 3 Comm. *302, is: "And it shall never be revived either by or against the executors or other representatives; for neither the executors of the plaintiff have received, nor those of the defendant have committed, in their own personal capacity any manner of wrong or injury." Chancellor Kent thus states it, 2 Comm. Holmes 12th Ed., *416, "Causes of action arising ex delicto, for wrongs for personal injuries, die with the person and do not survive against his representatives. Executors and administrators are the representatives of the personal property of the deceased, and not of his wrongs, except so far as the tortious act complained of was beneficial to his estate." Crapo v. Allen, and In re Statler, supra, assert that in admiralty also this rule applies. We have found no case to the contrary.

A personal injury inflicted by negligence on shipboard and on navigable waters is undoubtedly a maritime tort. Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 63, 34 S.Ct. 733, 58 L.Ed. 1208, 51 L.R.A.,N.S., 1157. In the present case the ship was in fault as well as the owner, and the person injured was aboard for purposes of navigation, if such elements are supposed to be of importance in the discussion in the Imbrovek case. "The law of the place of the wrong determines whether the claim for damages survives the death of the wrongdoer." Ormsby v. Chase, 290 U. S. 387, 54 S.Ct. 211, 78 L.Ed. 378, 92 A. L.R. 1499. The place of the wrong here to be considered is shipboard, navigable waters, rather than the territorial limits of Florida. Sailors, passengers and guests on vessels in Florida waters are under maritime law as regards the safety of the vessel and the care due by master or owner, rather than under the law of Florida. A proper uniformity requires that it be so. The duties of ship and owner to those on board do not change as the ship passes invisible State boundaries. In a common law State like Georgia, a cause of action for a tort does not survive the death of the tort-feasor before suit. Frazier v. Georgia R. R. Co., 101 Ga. 77, 28 S.E. 662; Smith v. Jones, Adm'r, 138 Ga. 716, 76 S.E. 40; though the contrary is held in Florida. Had the injuries here in question occurred on a night trip from Brunswick, Ga., to Jacksonville, Fla., the survival of personal liability would, if State law controls, depend on whether the gas was inhaled in Georgia or Florida waters, and probably could not be determined at all. We are of opinion that principles of admiralty law govern, uniform at least throughout the United States, and the principle touching survival heretofore declared is that a personal li-

---

[1] The federal statute, like most of the death statutes, does not provide for a survival of the injured person's right of action, but gives a new right of action which arises out of the death, in favor of named beneficiaries, the damages to be measured by their pecuniary loss. The suit is then not for a personal injury, but for a property damage. The question of survival vel non of a personal right of action is not involved. Meekin v. Brooklyn Heights R. Co., 164 N.Y. 145, 58 N. E. 50, 51 L.R.A. 235, 79 Am.St.Rep. 635. Decisions about death claims sustained in admiralty are not at all in point.

ability for an injury to person due to negligence does not survive the death before libel of the tort-feasor. If the law is to be changed, it ought to be by Act of Congress.

Nothing can be made of the argument that appellees could have sought a common law remedy in a Florida court if this proceeding had not stopped them. Yeiser died a citizen of Ohio, and there his executor was appointed and resides. It is not apparent how a Florida court would obtain personal jurisdiction. But if it could, the suit would still have been for a maritime tort, and appellees would have no rights different from what they would be in a court of admiralty, the remedy alone being different. Messel v. Foundation Co., 274 U.S. 427, 47 S.Ct. 695, 71 L.Ed. 1135; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S.Ct. 501, 62 L.Ed. 1171.

The interlocutory decree is affirmed as to the liability of the ship, but is reversed in so far as it holds that the personal liability of Yeiser survived his death. Damages may be assessed against the vessel and her proceeds only. The costs of this appeal will be equally divided between appellant and appellees.

HUTCHESON, Circuit Judge (dissenting).

My only difference with my brothers is upon whether Yeiser's death caused an abatement of the action in personam against him. Both by statute and by the common law of Florida,[1] personal injury actions arising in that state do not abate. Congress has not chosen to enact any law relative to the survival of actions in personal injury cases arising on navigable waters of a state. The answer to the case is to be found in traditional principles of maritime law accepted from the English High Court of Admiralty by the federal courts under the constitutional grant of power, or in the common law, and for this case the law of the state in whose waters the injury occurred is the common law for there is no general common law. I conclude that the traditional common law rule was that a personal right of action abated upon the death of either party and that following that traditional common law rule, there are admiralty precedents to the same effect. On the authority

of The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 146, 30 L.Ed. 358, I deny that there is any traditional maritime law to apply to this case, and point out that since admiralty in this matter merely follows the common law, there is no basis here for the holding that in admiralty the cause abates.

It is the crux of the appellant's argument that the common law principle "actio personalis moritur cum persona" has been adopted as a part of the general maritime law. The Supreme Court, in The Harrisburg, supra, cited by the appellant, denies this. The suit was for wrongful death, and the argument was made that the maritime law itself afforded such a right of action, but Mr. Chief Justice Waite, observing that "the maritime law, as accepted and received by maritime nations generally, leaves the matter untouched," chose, in the absence of a state statute to the contrary, to follow the common law, because no country should adopt "a different rule on this subject for the sea from that which it maintains on the land." 119 U.S. 199, at 213, 7 S.Ct. 140, at 146, 30 L.Ed. 358. In re Statler, D.C.N.Y., 31 F.2d 767, involving death claims under the Seamen's Act of 1920, 46 U.S.C.A. § 688, is to the same effect. There, the alleged tort-feasor died before the trial. It was held that the action abated because the statute must be interpreted in the light of the traditional common law rule of survival which was the rule in that state.

The import of these decisions and of those that follow is that the common law and not an independently existing system of maritime law furnishes the applicable principles relative to survival of actions in admiralty. The fact is that the maritime law, as applied either in the federal courts or by the old High Court of Admiralty in England, has never been considered as a complete and all-inclusive body of substantive law distinct from and coextensive with the common law itself. The maritime law may be, and, as a matter of practice is, often supplemented by the common law which can only be the law of the state; "there is no federal general common law." Erie R. Co. v. Tompkins, 304 U.S. 64, at 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487.

---

[1] See Secs. 4211, 7047, 7048, C.G.L., 1927; Waller v. First Savings & Trust Co., 1931, 103 Fla. 1025, 138 So. 780; Granat v. Biscayne Trust Co., 1933, 109 Fla. 485, 147 So. 850; Penn v. Pearce, 1935, 121 Fla. 3, 163 So. 288; International Shoe Co. v. Hewitt, 1936, 123 Fla. 587, 167 So. 7; and State v. Parks, 1937, 129 Fla. 50, 175 So. 786.

Accordingly, admiralty courts have uniformly given effect to the wrongful death statutes of the various states without regard to whether the action was originally brought in the state court at common law (American Steamboat Co. v. Chase, 16 Wall. 522, 21 L.Ed. 369, Sherlock v. Alling, 93 U.S. 99, 23 L.Ed. 819) or in the federal court in admiralty. The Hamilton (Old Dominion S. S. Co. v. Gilmore), 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264; La Bourgogne (Deslions v. La Compagnie Generale Transatlantique), 210 U.S. 95, 28 S.Ct. 664, 52 L.Ed. 973; see The Corsair, 145 U.S. 335, 12 S.Ct. 949, 36 L.Ed. 727. Some of these early decisions have been superseded by the Death on the High Seas Act of March 30, 1920, c. 111, 46 U.S.C.A., §§ 761–768, but the principle they represent has never been repudiated. The act does not alter the prior law insofar as the Great Lakes and the territorial waters of the states are concerned. The law of the state where the injury occurs determines whether or not the claim for damages survives. Ormsby v. Chase, 290 U.S. 387, 54 S.Ct. 211, 78 L.Ed. 378, 92 A.L.R. 1499; Restatement of Conflict of Laws, Sec. 390. That this law is declared by the highest court in a decision rather than by the legislature in a statute is not a matter of federal concern. Erie R. Co. v. Tompkins, supra. Therefore, the decision of the Supreme Court of Florida in the Waller case should be determinative of the issue here in controversy, unless the case is within the scope of the doctrine of uniformity of admiralty law in its characteristic features.

With respect to those activities which are directly connected with commerce and navigation in their interstate and international aspects, it has been held, though in the opinion of the writer, with doubtful wisdom and logic, that the law must be uniform throughout the United States, and the laws of the various states are not competent to modify or vary it. Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900; Clyde S. S. Co. v. Walker, 244 U.S. 255, 37 S.Ct. 545, 61 L.Ed. 1116; Peters v. Veasey, 251 U.S. 121, 40 S.Ct. 65, 64 L.Ed. 180; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145. The rationale of the cases holding invalid the application of state workmen's compensation laws to maritime employees is that a state law cannot affect a maritime contract or matters incidental thereto. But, illustrating the narrow and tenuous authority of these cases, is the well settled rule that though the contract is maritime if it is local in character and has no direct relationship to navigation, state compensation laws are applicable to determine rights and liabilities, and to regulate the method of seeking relief, because they do not interfere with any characteristic feature of the maritime law. Grant Smith-Porter Co. v. Rhode, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, 25 A.L.R. 1008; Miller's Indemnity Underwriters v. Braud, 270 U.S. 59, 46 S.Ct. 194, 70 L.Ed. 470; Carlin Const. Co. v. Heaney, 299 U.S. 41, 57 S.Ct. 75, 81 L.Ed. 27.

A tort action for wrongful death has no relationship to navigation, no characteristic features of maritime laws are distorted thereby, and there is no necessity for uniformity. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210. With regard to its effect upon any characteristic feature of maritime law, there is, there can be, no distinction between a death act and a survival statute. To modify and supplement by a state statute or by the common law of a state in whose waters the injury occurs, the rule applied in admiralty courts when following the common law does not prejudice the uniform administration of maritime law, 257 U.S. 233, at 242, 42 S.Ct. 89, 66 L.Ed. 210, and since in matters of survival of actions admiralty follows the common law, there is no need for uniformity. The early case of Crapo v. Allen, Fed.Cas.No.3,360, though correctly decided on its facts,[2] represents in its general statements, a view contrary to that herein expressed, that "the right of action, by the general maritime law, dies with the person injured" and that the right of survival of actions for torts, created by Massachusetts local law, should not be enforced. Subsequent cases have not sustained those general views. No valid distinction from the point of view of uniformity can be made between a survival action and an action of wrongful death of which the books are full. Here the injury occurred in the territorial waters of Florida and there can be no doubt that had a common law action been brought in Florida, it could have been

---

[2] The injury sued for occurred not in the territorial waters of Massachusetts but on the high seas, and there was no proof as in The Hamilton, that Massachusetts was the state of the ship's flag.

maintained. 2 C.J.S., Admiralty, § 62, page 124.

It is certainly, I think, unreasonable to say that though the action would have survived if brought at law, appellees may, by an injunction out of Admiralty, be prevented from asserting their right either at law or in admiralty.

In The Hamilton, 2 Cir., 146 F. 724, 727, the court said of a death action: "We cannot doubt that had suits been brought for these deaths in the courts of Delaware the plaintiffs would have succeeded. By the action of the petitioners they are enjoined from prosecuting their claims in the home forum and are compelled to present them here. Every consideration based on equity and natural justice impels us to hold that it was not the purpose of the limited liability act to enable vessel owners to force claimants into the admiralty, and thus avoid claims which are valid and enforceable at common law. The intent was to limit the liability, not to destroy it."

This decision and its reasoning was affirmed in the Supreme Court, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264, which also adequately disposes of the concern of the majority over interference with uniformity. Said the court in effect: Enforcement of the death statute would not produce any lamentable lack of uniformity. Courts everywhere must enforce the laws which govern the transaction, even if they are different from those governing the local transactions of the jurisdiction in which they sit. Finally, I see no breach of admiralty uniformity here at all. All admit that the cause of action against the yacht is not affected by the death of its owner[3] and that there was a cause of action against Yeiser in his lifetime. There is no effort as there is in the death cases, to introduce into admiralty a new and strange kind of cause of action. There is merely an effort to have admiralty continue, notwithstanding the death of the tort-feasor, to enforce the cause of action which it, as well as the common law of Florida, gave the plaintiff and it, following the common law of Florida, may continue to give him.

It seems perfectly clear to me that admiralty should not here follow the traditional common law rule of an action abating with the death of the wrongdoer in view of its almost universal disapproval in and disappearance from the jurisprudence of American states and particularly in view of the fact, that there is now no general federal common law but only the common law of the state where the particular court is sitting. Particularly should we not follow this ancient and discredited rule, in the face of the considerations of humanity, of reason and of common sense, together with the current of authority which now runs in favor of its abolition.

The District Judge was correct in refusing limitation of liability. Having once acquired jurisdiction, the admiralty court was competent to give claimants full affirmative relief. The judgment should be affirmed.

I respectfully dissent from the reversal.

---

[3] "A maritime lien arising from personal injury is a right of property in the vessel and therefore does not die with the person. The Ticeline, 2 Cir., 221 F. 409, affirming, D.C., 208 F. 670; The Lafayette, 2 Cir., 269 F. 917, 927. In Crapo v. Allen, Fed. Cas. No. 3360, 1 Spr. 184, the action held to have abated was in personam. In The City of Belfast, D.C., 135 F. 208, decision was based on a State statute as allowing survival of the action. Cf. The Student, D.C., 238 F. 936, affirmed, 4 Cir., 243 F. 807." Benedict, 5th Edition, Volume 1, page 23.