141 So.2d 291 (1962)
Beatrice J. THURSTON, a widow, Appellant,
v.
Roger I. MORRISON, Janice Morrison, and Berniece T. Morgan, Executrix of the Estate of Chester G. Morgan, Deceased, Appellees.
No. 2570.
District Court of Appeal of Florida, Second District.
May 18, 1962.
*292 George L. Knight of Hyzer, Knight & Lund, Miami, for appellant.
James C. Franklin, Jr., of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellee Berniece T. Morgan.
SHANNON, Chief Judge.
This is an appeal from a final judgment in favor of the defendants in a negligence action in which the appellant was the plaintiff below and the appellee's (Berniece T. Morgan) decedent was one of the defendants below. During the pendency of this appeal the defendant, Chester G. Morgan, died, and by order of this court his executrix became a party appellee in his stead. Appellees Morrison take no part in this appeal.
The defendant made a motion for directed verdict at the conclusion of all the testimony and the trial court deferred ruling on the motion until the verdict of the jury was in. The case resulted in a mistrial and thereafter the trial court granted judgment in accordance with defendant's motion for directed verdict.
The plaintiff, in her amended complaint, brought suit for the death of her husband, wherein she alleged that at the time of the collision Roger I. Morrison was the agent and/or employee of the defendant, Chet Morgan Motor Company, and was performing his regular duties as such agent and/or employee and was acting within the scope of his employment. Chet Morgan Motor Company filed its answer and denied that Roger I. Morrison was the agent of or was in the performance of any duties for Chet Morgan Motor Company, and, in the alternative, alleged that if the said Roger I. Morrison had acted as its agent or employee of the defendant at any time on November 25, 1959, that the duties had terminated and ceased prior to the happening of the accident, or, in the alternative, that he had deviated wholly from the course or scope of his employment prior to the happening of the accident. The accident occurred at approximately 5:00 P.M. on November 25, 1959, on State Road No. 80, approximately 21 miles west of Clewiston. State Road No. 80 is a direct route between LaBelle and Clewiston.
Morrison was an outside salesman of Chet Morgan Motor Company, for which *293 he received the sum of $500.00 a month, $300.00 for salary and $200.00 for expenses. There is some evidence in the record concerning his salary and expenses, but that was conflicting evidence.
Ordinarily Chet Morgan Motor Company furnished a demonstrator automobile for the use of Morrison, and on November 24, 1959, while passing through LaBelle he stopped to see a customer who had previously purchased two cars from Chet Morgan. From his conversation with this prospective purchaser Morrison had been advised that the former wished to trade in a 1955 Chevrolet, and especially mentioned being interested in a six cylinder stick shift Chevrolet. Morrison knew that Chet Morgan Motor Company did not have a car such as the one the prospective purchaser desired, but he also knew that his wife had a car, which she had purchased at wholesale price from Chet Morgan Motor Company, and hence, he informed the purchaser that he would come over the next day and bring that car with him. Morrison lived in Clewiston, and on the 25th day of November, 1959, the day of the accident, Morrison went to the place of business of Chet Morgan Motor Company in Clewiston and from there he drove a demonstrator car to the school where Mrs. Morrison worked, left it for her personal use, took the six cylinder stick shift Chevrolet and delivered it to a gas station to have it polished and timed. Also, on the morning of November 25, 1959, he had a conference with his immediate superior, Audie Hooks, and a fellow-salesman named Finuff, at which time it was agreed that Morrison would return on November 25 at around 5:00 P.M. and go with Finuff to South Bay in an effort to sell a car to a prospect there. At that time Morrison also discussed his proposed trip to LaBelle with Hooks and specifically mentioned that he was taking his wife's car and would discuss other cars with the prospective purchaser. He left Clewiston at approximately 10:00 A.M. on November 25, 1959, and arrived in LaBelle at around 11:00 A.M. He immediately contacted his prospective purchaser, Burchard, and discussed with him until about 12:00 noon, not only his wife's car, but also several other cars that were owned by Morrison's employer. At noontime Morrison and Burchard drove to a bar room in LaBelle where Morrison purchased some liquor which the both of them drank. Thereafter they had lunch and Morrison drove back to the place where he had picked up Burchard. During most of this time both of them had talked about several different cars and the discussion was the difference in cash between the car the prospective purchaser had to trade and the various cars mentioned. Morrison left Burchard between 1:30 P.M. and 2:00 P.M. and went back to LaBelle and partook of more liquor. As a result of injuries he sustained in the subsequent accident Morrison could not detail at the trial what he had been doing during the afternoon of the 25th, but in all events it was some time around 4:00 P.M. that he proceeded on State Road No. 80 in the direction of Clewiston and the accident occurred around 5:00 P.M., twenty-one miles west of Clewiston on the same road. The evidence clearly showed that there was a head-on collision between the car that Morrison was driving and the automobile that was being driven by George Thurston, Deceased.
The points of law determinative of the correctness vel non of the grant of a directed verdict for the defendant can be stated as: 1) was Morrison acting in the course of his employment in his trip to LaBelle, and, 2) if so, whether or not Morrison had, while in LaBelle, deviated from the course of his employment.
If the evidence showed that Morrison's sole purpose in taking the trip to LaBelle was for the purpose of selling his wife's car and nothing more, the granting of a directed verdict for the defendant would have been proper, but the facts do not justify this conclusion. Morrison was in the employ of appellee's decedent and as such employee he had learned of the *294 prospect of selling a car to the particular person whom he went to see in LaBelle. The prospective purchaser may have preferred a car such as was owned by Morrison's wife, but while there Morrison discussed the sale of several different cars to the prospective purchaser, including several cars which were owned by Chet Morgan Motor Company. It is true that he may have preferred selling his wife's car so that he could possibly make a profit on it, but it would be impossible for us to determine whether that was the only car specifically discussed, when according to Morrison's own testimony:
"Q. And you gave him that on three different cars?
"A. I know specifically that we figured on a Corvair and a '60 model two-door sedan that we had in stock at that time, then this car I was in."
From this conversation it appears that the cars which belonged to Chet Morgan Motor Company were discussed and figured on between Morrison and Burchard.
In Bourgeois v. Dade County, Fla. 1957, 99 So.2d 575, 72 A.L.R.2d 391, the court says:
"It is a rule well established that a party requesting a directed verdict admits both the facts in evidence and also every conclusion favorable to the adverse party which a jury might fairly and reasonably infer from the evidence. Under our system of trial by jury a case should not be withdrawn from the jury's consideration unless as a matter of law no proper view of the evidence could possibly sustain the position of the party against whom the verdict is directed."
In directing verdict for the defendant in the present case, the trial judge was acting within the authority granted him in Rule 2.7(b), Florida Rules of Civil Procedure, 31 F.S.A.:
"Whenever a motion for a directed verdict made at the close of all of the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury at such time subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with the motion for a directed verdict. (Emphasis added).
The fact that the case went to the jury and it failed to reach an agreement does not change the principles applicable to the grant or denial of a directed verdict in this type of situation. The rule quoted above from the Bourgeois case should be applied in the instant case, and we think the judge below was in error in failing to permit a retrial of the cause.
It is well established that under the doctrine of respondeat superior an employer may be liable in damages for the negligence of an employee which results in injuries to, or death of, another, if the wrongful act transpired while the employee was acting within the course of his employment. See, e.g., International Shoe Company v. Hewitt, 1936, 123 Fla. 587, 167 So. 7; and 21 Fla.Jur., Master and Servant, Sec. 71. In the area of workmen's compensation, Sec. 440.09(1) Fla. Stat., F.S.A., requires that an injury, in order to be compensable, must arise out of and in the course of employment. The workmen's compensation cases dealing with the question whether or not, at the time of the injury, an employee was within the course of his employment are cited to us by both the appellant and the appellee in the case at bar and will be discussed herein on this question.
*295 Whether or not Morrison had personal business in LaBelle on the day of the accident is immaterial as long as he called upon the prospective buyer and discussed several cars which belonged to Chet Morgan Motor Company. He may have had concurrent business in LaBelle on that particular day. See Cook v. Highway Casualty Company, Fla. 1955, 82 So.2d 679, and cases cited therein.
We are of the opinion that the trial court should have left the question of whether or not Morrison was in the course of his employment in making this trip to LaBelle to a jury.
On the second question both sides have cited the case of Fidelity & Casualty Company of New York v. Moore, 1940, 143 Fla. 103, 196 So. 495. The writer of this opinion participated in the Fidelity & Casualty case and it constitutes no authority on this question. However, the writer also participated, on the losing side, in a subsequent case which arose in almost the same location as did the present one. This case is Hardware Mutual Casualty Co. v. Carlton, 1942, 150 Fla. 729, 8 So.2d 665, a workmen's compensation case. In that case a per curiam decision of affirmance was rendered by our supreme court and so the facts will be gleaned from the record therein. In the Carlton case an outside salesman for a Tampa wholesale grocery concern was furnished a car and a route sheet. He spent the night before the accident in Fort Myers, went to Boca Grande the next day, and when he had finished there came back to Punta Gorda about noon. He had no duties on that day in Punta Gorda and his next port of call was at Clewiston. He had some orders which he was required to mail and he did so at Punta Gorda. In the subsequent hours he had several drinks at Punta Gorda, left there at about 8:00 P.M. or 8:30 P.M., on his way to Clewiston and was killed on the roadway. The Deputy Commissioner found that his death was occasioned primarily by the intoxication of said employee and it did not arise out of the course of his employment. The full Commission reversed the Deputy Commissioner. The circuit court affirmed and the case was appealed to the supreme court with the result which we have indicated.
The facts of the Carlton case fit in so exactly with the facts in the present case as to the question of deviation from course of employment that we are citing it as authority, even though the opinion does not state the facts.
In the instant case, while there is a period of an hour or maybe two hours in LaBelle that we cannot account for, Morrison's activities, as shown by the record, indicate that he was on the direct route back to Clewiston at the time of the accident. This brings us within the language used in N. & L. Auto Parts Company v. Doman, Fla.App. 1959, 111 So.2d 270, so that if it could be said that Morrison had deviated from the course of his employment in LaBelle, it could likewise reasonably be found that the deviation was completed when Morrison set out to return to Clewiston.
Morrison was on the direct route from the place where he had been to the place where he had an appointment at 5:00 that afternoon with a fellow-employee of his to show a car owned by Chet Morgan Motor Company to a prospective customer. Hence, a jury would be justified in finding that Morrison was, at that time, acting within the course of his employment.
The final judgment of the trial court is reversed and the cause is remanded for a new trial.
SMITH and WHITE, JJ., concur.