TERRELL, Justice.
On the morning of December 25, 1951, Raymond M. Motes picked up Homer Lambkin Crosby and his wife, Eva Crosby, about three miles south of Tallahassee, to transport them to Bassett’s Dairy to the left of Highway No. 63, two miles north of Tallahassee. Before commencing the journey, Motes imbibed a bottle of ale. He drove north through Tallahassee absent a single incident. As he approached the first turn to Bassett’s Dairy traffic from the rear was pressing him so closely that he proceeded to the last turn, bearing so far to the right that his car came to rest on the shoulder. After a brief halt he turned left to approach the dairy and as he entered the west lane of the highway he was struck amidships by an automobile approaching from the north driven by James Floyd Lawley. The impact knocked Motes’ car off the highway, turned it upside down and seriously injured the Cros-bys. Lawley’s car came to rest pointing northwesterly in the opposite direction in which it was proceeding. This suit was brought by the Crosbys pursuant to the guest statute, F.S.A. § 320.59, to recover damages for personal injuries. Mr. and Mrs. Crosby recovered judgments for $7,-500 and $15,000, respectively. Lawley on cross-eomplaint recovered a judgment for $2,000. This appeal was prosecuted but we are concerned only with the Crosby judgments, that in favor of Lawley having been settled. Motes died while the appeal was pending, hence the reason for its, prosecution in the name of his administratrix.
There is no controversy about the governing law of the case or the fact that conflicts in the evidence should be resolved in favor of the Crosbys. Neither is there any suggestion that the judgment is excessive. The sole point for determination is whether or not the evidence was sufficient to warrant the jury in finding Motes guilty of gross negligence and wilful and wanton misconduct.
It is clear that if Motes was guilty of gross negligence and wilful and wanton misconduct, it was due to the manner in which he halted ’ and proceeded to cross *480 the highway to Bassett’s Dairy, because there is not the slightest showing of negligent driving before he reached this point. There is evidence that he operated his automobile in a “peculiar” manner. When he halted on the shoulder to make the turn to Bassett’s Dairy, he looked to the south, but did not look to the north, though visibility was clear for 300 feet and the highway was heavily traveled. He then turned left directly across the highway in front of Lawley’s car that was bearing down on him from the north. The evidence shows that he did not see Lawley’s car till about the time it struck him, though he could have seen it if he had looked north before he put his foot on the gas. Whether or not such conduct constituted gross negligence and wilful and wanton misconduct turns on reasonable deductions from the evidence.
It may be that a different jury would have produced a different answer to the query, but that is not the test. The test is whether or not the jury misconceived the weight and effect of the evidence, or were unduly prejudiced in some way. Reasonable deductions from the evidence, the demeanor of the witnesses, the manner in which defendant behaved, including other factors, may enter into the jury’s decision. Some of these are intangible elements that cannot be transmitted to the appellate court, though they are a part of every jury trial and may influence the verdict as much as the oral testimony. For this reason we decline to reverse the verdict of a jury except on clear and convincing showing of error.
It may be that jury trial technique will some time be televised or improved in such a manner that the intangible factors can be presented to the appellate court. When that time arrives, we may better understand what weight the jury gave the nod of the judge, the behavior of defendant, the ogle of a witness or the demeanor of others that may have a part in the trial. Since there is no contention that the verdict was excessive or that anything else is wrong except that it was not warranted by the evidence, we must decline to reverse because injury was shown and there is: "insufficient showing that the jury was misled.
When Motes picked up the Crosbys to transport them to Bassett’s Dairy, he imposed a serious responsibility on his hospitality. If - he had picked up a horse or dog the responsibility might have been much reduced but our Christian, democratic tradition places so much emphasis on the worth of human beings that a grave penalty is eminent if we negligently kill or maim one. Then, there was evidence that “Christmas cheer” had some part in Motes’ behavior at the time of the accident. What deduction the jury drew from this, if any, we venture no opinion. It was one of the intangible factors before them and it is a fact that when the oldsters at the bar were ploughboys it was Common knowledge that a few draughts of “Christmas cheer” would prompt a “timid fellow to fight a buzz-saw” or “a jack rabbit to spit in a bull dog’s face.” Whether or not it unleashed his nerves or emboldened Motes with an irresistible impulse to proceed across the highway in the face of danger, was a jury question.
Whether the intangible elements we have pointed out had anything whatever to do with prompting the verdict we cannot tell. The point is that they were present and could have done so. The verbal evidence shows conclusively that when Motes halted on the shoulder of the highway immediately prior to crossing to Bassett’s Dairy, he looked to the south but took no thought of the north though the highway was a heavily traveled one. He drove into the path of Lawley who at best was not over four or five seconds away and could have been seen if he (Motes) had looked in that direction. ■ Despite Motes’ extremity, discretion required him to survey the highway in both directions before crossing. He neglected to do so. .
In this we have not overlooked the contention that Lawley was exceeding the speed limit and that in so doing he was at least a joint tort, feasor. This, if true, did not relieve Motes of the duty to look both ways before he proceeded across, the highway. His negligence in failing to do this *481 placed him and the Crosbys in peril. When all the factors, tangible and intangible, as detailed herein, are considered, we cannot say that the jury committed error in finding Motes guilty of gross negligence and wilful and wanton misconduct.
It follows that the judgment appealed from must be and is hereby affirmed.
Affirmed.
ROBERTS, C. J., and THOMAS and SEBRING, JJ., concur.