WHITE, Judge.
Appellant, P. & N. Investment Corporation, suffered judgment in the sum of $872.-00 and costs in a contract action brought by plaintiff Mark Rea who was a former employee of the defendant in the latter’s restaurant establishment. During the trial the plaintiff called the president of the defendant corporation to the stand without identifying him as an adverse witness under the rule.[1] The defendant’s president *866 testified on cross examination with reference to the term or duration of plaintiff’s employment. This testimony conflicted with the testimony of the plaintiff who was seeking to recover an alleged balance of salary.
The defendant contends on appeal that the plaintiff, having failed to invoke the rule, was bound by the adverse testimony of defendant’s president because it was given by plaintiff’s own witness and rendered plaintiff’s evidence insufficient to support the verdict. We deal with this question within the limits of a record that is partially stipulated and does not contain a complete transcript of the trial proceedings.
The plaintiff was employed as chef and manager of defendant’s restaurant at an agreed salary of $100.00 per week. He voluntarily terminated his employment eighteen months after the restaurant opened, and he then sued for compensation according to alleged agreement at $100.00 per week for services performed during the nine weeks preceding the opening of the restaurant. During the nine weeks period, while the restaurant establishment was under construction, the plaintiff was paid $100.00. The defendant denied employing the plaintiff for the nine weeks period and asserted that the $100.00 payment was only an advance against salary to be earned after the opening of the restaurant for which the plaintiff was fully paid. The defendant counterclaimed for the $100.00.
The plaintiff’s four witnesses included James G. Pace, president of the defendant corporation. The defendant called only •the aforesaid James G. Pace. The plaintiff testified that upon being employed at the salary of $100.00 per week he reported to a supervisor of defendant’s project, and from April 5, 1961 busied himself every normal working day ordering supplies and helping set up the business through June 10, 1961, when the restaurant was completed and read)'- for opening. The plaintiff further testified that he asked the supervisor for his salary for the period in question and that a check was written but was somehow lost; that he, the plaintiff, thereupon went to the defendant’s office, requested his salary from James G. Pace and received a check for $100.00; that although he later made demand for the balance, no further payment was made with reference to that particular period of time.
James G. Pace stated that the plaintiff was very helpful throughout the period in question but that as far as he, the witness, was concerned the plaintiff was only “hanging around” and was not on the payroll. He further stated that he had never received any request for payment of salary for said period and that the $100.00 was to be applied on plaintiff’s salary accruing after the opening of the restaurant. He stated that he had made no effort to charge the $100.00 against future salary and had made no previous demand for repayment. The jury, as indicated, found for the plaintiff.
Did the testimony of defendant’s president, being contrary to plaintiff’s testimony, destroy plaintiff’s otherwise prima facie case? In approaching this question, which we are constrained to answer in the negative, we first observe that neither our own research efforts nor citations by counsel have revealed any Florida decision apposite enough to be clearly controlling.
An opposing litigant or interested witness is generally disinclined to give testimony adverse to the side he favors. This points up the rationale of defendant’s position that since the plaintiff saw fit to call an adversely interested party as his own witness and is willing to accept the fruits of possibly favorable answers, he should be bound by unfavorable answers absent invocation of the adverse witness rule. We must disagree, however, that such is the necessary implication of the adverse witness rule in all cases where it is not invoked.
A prime purpose of designating a witness adverse is to lay a predicate for leading questions on direct examination. Cf. Fla. Jur., Witnesses, §§ 157, 160. We cannot *867 determine from the record here whether the defendant objected to its president being called as a witness by the plaintiff. It does appear that the testimony of the witness on direct examination did not conflict with plaintiff’s prima facie case. As far as this witness was concerned, the issue of whether the plaintiff was to begin employment for pay on April 5, 1961, or at the time the restaurant opened was not touched upon until “cross” examination by counsel for the defendant. The negative testimony which would lend color to the defendant’s theory was not brought out by the plaintiff.
The president of the defendant was de facto adverse to the plaintiff whether so designated or not, but he was a competent witness for either or both of the parties. The common law rule that interested parties could not testify was based on the hypothesis that men were so corrupted by their interest that they would perjure themselves for it. Day v. Stickle, Fla.App.1959, 113 So.2d 559, 560, 80 A.L.R.2d 1291. That rule, with the reservation of the so-called Dead Man’s Statute, has been renounced. It has long been the general rule by statute in Florida that interest in the outcome of a case does not disqualify a witness but merely goes to the weight and credibility of his testimony. Fla.Stat. § 90.05, F.S.A. Of course where the adverse status of the witness is so designated, the party calling the witness under the rule is explicitly free to contradict and impeach. Busser v. Sabatasso, Fla.App.1962, 143 So.2d 532; Gordon v. Sutherland, Fla.App.1961, 131 So.2d 520.
In this connection we find some interesting federal judicial opinions pertaining to corresponding Rule 43(b), Federal Rules of Civil Procedure, and the extent to which a plaintiff may be bound by the adverse testimony of an apparently adverse witness whom the plaintiff has called without invoking the rule. A number of relatively recent decisions indicate that the adverse witness rule, if not invoked, is not applicable where the plaintiff simply calls the witness and seeks no special privileges with respect to the examination; and it has been held that the plaintiff in such case is not always bound by everything the witness says. In Johnson v. Baltimore & O. R. Co., U.S.C.A. (3rd Cir.), 1953, 208 F.2d 633, cert. denied 1954, 347 U.S. 943, 74 S.Ct. 639, 98 L.Ed. 1091, the plaintiff called the defendant’s employee, whose conduct had given rise to the action, and asked him questions in the same way as he did other witnesses and asked for no special privileges with respect to the examination. It was held inter alia that the rule relating to calling an adverse party for examination in the nature of cross examination was not applicable. The Court said:
“(1) That rule [43(b)] is not in this case. The plaintiff did not call Hall as an adverse party or an unwilling witness. We are not saying that he would be compelled to designate him by that label if he wanted to take advantage of Rule 43(b). The point is that counsel for the plaintiff simply called Hall as a witness and asked him questions in the same way as he did the other witnesses. He asked for no special privileges with regard to the examination. We think, therefore, that Rule 43(b) has nothing to do with this case.
"Then there is the further question whether, when one calls a witness, everything which that witness says, so far as the party calling him is concerned, must be taken as gospel truth. This point was discussed in Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467. But in that case we were not called upon to repudiate the old rule that a party is bound by the testimony of his witness. When witnesses were called by a party from among his friends to act as compurgcu-tors it was completely rational that the party calling them would have to stand by what they said. After all he chose his friends. But when witnesses are called, in some stranger’s lawsuit, to tell about things they saw, heard, or did, there is no reason in logic or common *868 sense or fairness why the party who calls them should have to vouch for everything they say. All this has been said vigorously and strikingly by Dean Wigmore, who stated: ‘There is no substantial reason for preserving this rule, — the remnant of a primitive notion.’ It is only necessary to cite Wig-more for full discussion of the matter.
“All the modern writers in the law of evidence speak to the same effect. Thus, Edmund M. Morgan, in a forthcoming book, says:
“ ‘The fact is that the general prohibition, if it ever had any basis in reason, has no place in any rational system of investigation in modern society. And all attempts to modify it or qualify it so as to reach sensible results serve only to demonstrate its irrationality and to increase the uncertainties of litigation.’
“John M. Maguire also has attacked the rule:
“ ‘According to the best professional thought, sweeping prohibition of impeachment by a party of his own witnesses is nonsense — most regret-ably not simple nonsense, * * *.’
“Likewise, see John E. Tracy: ‘The reasons given for this rule * * * are none of them very sound.’ In an exhaustive article, Mason Ladd advocates ‘complete abolition of the rule’ and proposes as a statutory substitute: ‘No party shall be precluded from impeaching a witness because the witness is his own.’ Finally, the Model Code of Evidence framed by the American Law Institute abolishes the prohibition: ‘ * for the purpose of impairing or supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence concerning any conduct by him and any other matter relevant upon the issue of his credibility as a witness. * * * ’ ” (Emphasis added.)
See also U. S. v. Uarte, U.S.C.A. (9th Cir.) 1949, 175 F.2d 110; Dill v. Scuka, U.S.C.A. (3rd Cir.) 1960, 279 F.2d 145.
The conclusion is that adverse witness Rule 1.37(a), Florida Rules of Civill Procedure, does not require that an adverse witness in fact be so declared; and where the rule is not invoked, as in this case, the rule is not applicable. We further hold that where an obviously adverse witness is called and interrogated as in this case, the plaintiff is not bound by unfavorable testimony of such witness unless the evidence otherwise fails to demonstrate a prima facie case.
This case was properly submitted to the jury on competent conflicting testimony, so the verdict and judgment will not be disturbed.
Affirmed.
KANNER, Acting C. J., and ALLEN, J., concur.

. 1.37(a) Florida Rules of Civil Procedure, 30 F.S.A.
“Adverse Witness. A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate Mm by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, aDd the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross examined by the adverse party only upon the subject matter of his examination in chief.”