341 So.2d 197 (1976)
Robert PARKER, an Individual, and Federal Insurance Co., a Foreign Corporation, Appellants,
v.
MIRACLE STRIP BOAT & MOTORS HEADQUARTERS, INC., a Florida Corporation and Insurance Company of North America, a Foreign Corporation, Appellees.
No. BB-38.
District Court of Appeal of Florida, First District.
December 3, 1976.
On Rehearing February 2, 1977.
*198 C. Richard Watson, of Isler, Higby, Brown & Smoak, Panama City, for appellants.
J. Robert Hughes, Mayo C. Johnston, Panama City, for appellees.
BOYER, Chief Judge.
Appellant, owner of a 28 foot Chris Craft boat called the "Keep Bailing", filed suit after his boat sank, claiming that appellee breached its duty as bailee while in possession of appellant's boat for the purpose of effecting repairs. After hearing all of the evidence, the trial court entered a directed verdict against appellant and instructed the jury accordingly. Appellant has appealed, asserting that the trial court erred in entering a directed verdict in favor of appellees, in refusing to allow appellant to call a former employee of appellees as an adverse witness or, in the alternative, in holding that appellant was bound by the testimony of that witness, and in refusing to allow another of appellant's witnesses to testify as an expert witness.
Appellant took his boat in early March of 1974 to a marina owned by Miracle Strip Boat & Motors Headquarters, Inc. for repairs to the transmission. Some three weeks later, appellant was informed that his boat had sunk. According to an expert called by appellant, when the transmissions were removed from the boat, the manifold hoses which connect the transmissions to the exhaust pipes should have been tied up above the water line and stuffed with rags to prevent water from coming in. Joseph Purrington, an insurance adjuster, testified that when the boat was raised from the water, the manifolds were lying on the floor of the boat, and had no rags stuffed therein. Appellant's counsel attempted to qualify Mr. Purrington as an expert on marine losses, but the trial court ruled to the contrary. Clifford McDuffy, the person who raised the boat from the bottom, stated that water came through the packing nut on the right shaft and that rags were stuffed in the exhaust pipes. Appellant attempted to call Charles Stump, an employee of appellee at the time the boat sank (but not at the time of trial) as an adverse witness, but the trial court refused. Mr. Stump, whom appellant initially approached to have the transmissions repaired, testified that he stuffed rags in the manifold or exhaust pipes. He also noticed that someone had stuffed rags from the outside into the exhaust ports as a further precaution against water leakage. Finally, he noted that the exhaust pipes were already supported in an elevated position in the engine compartment by a factory-installed brace. The trial court, in announcing his decision to direct a verdict in favor of appellees, noted that since appellant had called Mr. Stump as a witness, appellant would be bound by his testimony.
The first point raised by appellant concerns the propriety of the directed verdict entered against him. In a bailment situation, the plaintiff makes a prima facie case for damages when he shows that the bailed property was delivered to the bailee in good condition and that it was damaged while it was in the care, custody, and control of bailee. (Adelman v. M & S Welding Shop, Fla.App.3rd 1958, 105 So.2d 802) To overcome the resulting inference of negligence, the defendant must present evidence tending to show that he did not breach his duty of ordinary care. (See Peacock Motor Company of Marianna, Inc. v. Eubanks, Fla. *199 App. 1st 1962, 145 So.2d 498) Sub judice appellees admit that appellant made out a prima facie case, but argue that more than enough evidence of due care was presented to negate the presumption arising in favor of appellant. According to appellees, the only possible conclusion from the evidence is that appellant's boat sank within four or five hours of the shaft packing nut becoming so loose that it could be turned by hand. We believe, however, that a fair reading of the evidence could lead an objective observer to a different conclusion. Taking the testimony of the mechanic called by appellant as an expert witness and the testimony of Mr. Purrington, one could very well conclude that the boat sank because improper procedures had been utilized in removing the transmission from the boat. The latter conclusion may be reached only if certain aspects of Mr. Stump's testimony are disregarded. Yet, the trial court held that appellant who unsuccessfully attempted to call Mr. Stump as an adverse witness, was bound by Mr. Stump's testimony. Thus, as to the directed verdict issue, the testimony of Mr. Stump is crucial, and it is to that witness' testimony to which we now turn.
In Florida, the class of persons who might be characterized as "adverse witnesses" is restricted. First, there is the "unwilling or hostile witness" who may be asked leading questions. Second, there is the "adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party" who may be interrogated by leading questions and may be contradicted and impeached in all respects. (Rule 1.450, RCP) The "unwilling or hostile witnesses" as envisioned by the rule may be asked leading questions, but may not be impeached unless the testimony of the witness is unexpected and prejudicial to the party who has called the witness. (F.S. 920.09; see also Foremost Dairies, Inc. of the South v. Cutler, Fla.App. 4th 1968, 212 So.2d 37, 40) Sub judice, appellant has conceded that the testimony of Mr. Stump was neither surprising nor unexpected.
Thus, the only category remaining under Rule 1.450 is that of the "adverse party", which also includes an officer, director, or managing agent of a public or private corporation or a partnership or association which is an adverse party. Careful scrutiny of that portion of the rule relating to an adverse party reveals that the only possible designation under which Mr. Stump could possibly qualify would be that of a "managing agent". The Supreme Court has delineated the criteria which a witness must meet to qualify as a "managing agent". In Tucker Brothers, Inc. v. Menard, Sup.Ct. Fla. 1956, 90 So.2d 908, the court held:
"We do not construe the expression `managing agent' to require that the corporate representative be an officer or in the nature of a general manager. So far as this particular rule is concerned, it is sufficient if he is a managing representative of the corporation in connection with the particular matter under consideration * * *" (Tucker Brothers, Inc. v. Menard, at 90 So.2d 913)
Sub judice, the record indicates that Mr. Stump was merely an agent of appellee Miracle Strip Boat & Motors Headquarters, Inc., employed by the corporation as a mechanic for inboard-outboard boats, and could not be considered a "managing agent".
Despite our finding that the trial court properly refused to allow appellant to call Mr. Stump as an adverse witness, there remains the question of whether appellant was bound by Mr. Stump's testimony. The overwhelming majority rule on that issue is that notwithstanding the rule that a party cannot impeach his own witness, the party may establish, by other witnesses, that the facts are otherwise than as stated by a particular witness. (81 Am.Jur.2d 633, "Witnesses", § 626; see also 98 C.J.S. Witnesses § 630, p. 647.) It has been observed that even where a witness has not been called as an adverse witness, plaintiff is not always bound by the unfavorable testimony of such a witness. (P. & N. Investment Corporation v. REA, Fla.App. 2nd 1963, 153 So.2d 865, 867) Thus, inasmuch as appellant *200 was not bound by the testimony of Mr. Stump, and there was sufficient evidence otherwise from which the jury could have concluded that appellant's boat sank because appellees breached their duty of ordinary care, the directed verdict should not have been granted by the trial court at the conclusion of appellant's case.
There remains one unresolved issue for our determination. Specifically, should the trial court have permitted insurance adjuster Joseph Purrington to testify as an expert on marine losses. After examining the transcript of trial testimony, we find that although Mr. Purrington might have been qualified under certain circumstances, appellant's counsel failed to ask the proper questions which would have qualified him as an expert. The trial judge did not therefore err in that regard.
REVERSED AND REMANDED for a new trial.
McCORD and MILLS, JJ., concur.

ON REHEARING GRANTED
PER CURIAM.
In our original opinion we reversed, holding that the learned trial judge erred in ruling that a party is necessarily bound by unfavorable testimony adduced from his own witness. In their petition for rehearing, appellees point out certain erroneous statements of fact recited in our opinion. Specifically, appellees object to the following: "According to an expert called by appellant, when the transmissions were removed from the boat, the manifold hoses which connect the transmissions to the exhaust pipes should have been tied up above the water line and stuffed with rags to prevent water from coming in. Joseph Purrington, an insurance adjuster, testified that when the boat was raised from the water, the manifolds were lying on the floor of the boat, and had no rags stuffed therein." [supra p. 198.]
After re-examining the record, we note that the expert called by appellant did not testify that the method described by him for preventing water leakage was the only acceptable one, but agreed that if rags were stuffed in the pipes on the inside and on the outside, and if the boat was moored so that the stern was away from the general wave action of the water, then such procedure would be proper. Further, Mr. Purrington, the record indicates, was not present at the moment that the "Keep-Bailing" was raised from the water, but arrived sometime thereafter, although the record is by no means clear as to exactly when Mr. Purrington did make his examination.
The issues of fact raised by appellees in their petition for rehearing are significant. Under the holdings of law in our original opinion to which we continue to adhere, appellant, notwithstanding the rule that a party cannot impeach his own witness, was entitled to establish by other witnesses that the facts were otherwise than as stated by a particular witness called by him. The record indicates, however, that appellant did not present any competent evidence to contradict the testimony of Mr. Stump who stated that rags were stuffed both inside the boat in the manifold pipes and outside the boat in the exhaust ports. Mr. Purrington, who was not present when the boat was raised, could merely testify as to what he observed several hours thereafter. Therefore, the testimony by Mr. Purrington did not contradict the testimony of Mr. Stump because of the period of time which had elapsed between the raising of the boat from the water and Purrington's examination of it. Arriving at the conclusion that no rags were stuffed in the manifold pipes before the boat sank would necessitate the impermissible speculation that the condition of the boat had not changed between the time it was raised and the time it was examined by Mr. Purrington.
Thus, although the trial judge erroneously ruled that appellant was bound by the testimony of Mr. Stump, the directed verdict in favor of appellees was properly entered because of the lack of competent evidence tending to contradict that testimony and to establish negligence on the part of appellees. Accordingly, without in any *201 manner modifying the recitations of legal concepts contained in our original opinion, we find from a re-examination of the record that the evidence adduced at trial was as urged by appellees in their petition for rehearing rather than as recited in our original opinion. We, therefore, recede from reversal and hold that the final judgment based on the directed verdict should be and is
AFFIRMED.
BOYER, C.J., and McCORD and MILLS, JJ., concur.